THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EARL GOOD, Defendant-Appellant.

Fifth District   No. 76-548

Opinion filed February 7, 1979.

Stephen R. Clark, of Montalvo and Clark, of Belleville, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Raymond F. Buckley, Jr., and Curtis L. Blood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

The defendant, Earl Good, appeals from the order of the Circuit Court of St. Clair County which denied his motion to withdraw his pleas of guilty. The motion was filed pursuant to Supreme Court Rule 604(d) (Ill. Rev. Stat. 1977, ch. 110A, par. 604(d)). Defendant pleaded guilty to two counts of murder and was sentenced to two concurrent terms of not less than 90 years nor more than 180 years.

Defendant raises four issues on appeal: (1) whether the pleas were involuntary, because the court failed to advise the defendant of his privilege against self-incrimination; (2) whether the prosecution violated the terms of the plea agreement by making a sentencing recommendation; (3) whether the defendant was denied effective assistance of counsel at trial, because of a potential conflict of interest on the part of defendant's court-appointed counsel[1]; and (4) whether the sentence is excessive.

Defendant was jointly indicted with James Phillips and James Spicer on two counts of murder, one count of attempt murder, and one count of armed robbery. Upon Phillips pretrial motion, his case was severed from Spicer's and Good's. Upon the State's motion, defendant's case was severed from Spicer's. The severance motions were not made part of the appellate court record. Based on the record, we assume that Phillip's motion was made on the basis that he could not receive a fair trial if he were tried with Spicer and Good, who had stated that the other had fired the fatal shots. We further assume that the State's motion for severance was made to avoid problems in admission of Spicer's and defendant's statements which might be violative of *Bruton v. United States* (1968), 391 U. S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, if the cases were tried together. Spicer and Phillips were convicted by a jury on all counts. (See *People v. Spicer* (5th Dist. 1978), 61 Ill. App. 3d 748, 378 N.E.2d 169, *appeal allowed* (1978), 71 Ill. 2d 613.) The public defender was appointed to represent defendant. A motion for change of venue was granted from St. Clair County to Randolph County on the basis of prejudicial pretrial publicity (Ill. Rev. Stat. 1975, ch. 38, par. 114—6). A motion for substitution of judges was also granted.

---

[1] Defendant has filed an affidavit of waiver of claim of conflict of interest concerning appellate counsel. Appellate counsel is a Special Assistant Attorney General. Defendant's affidavit, signed by him, states that he had been informed of the law concerning the representation by an assistant attorney general in a criminal case and that he waives any claim of conflict.

On April 30, 1976, defendant pleaded guilty in St. Clair County to two counts of murder in exchange for the State's promise to dismiss the attempt murder and armed robbery counts. The defendant personally stated the factual basis for the pleas. On November 15, 1975, at approximately 8 a.m., defendant entered the side door of the Leading Food Store in East St. Louis as the store had not opened for business. Defendant had a black .38-caliber gun and wore a black leather jacket and a tight stocking cap. Defendant went to the safe, which was already open, and removed the money. While he was removing the money, defendant heard between three to five shots. The robbers left hurriedly and went to the home of James Phillips when the police pulled up. Within 25 minutes the police arrived at Phillips' house and defendant went out the back door leaving his jacket, his gun, and his suitcase behind. In the suitcase was a camera and a roll and a half of pictures which had been taken in the East St. Louis area during the previous three days. Defendant took a taxi to St. Louis, an airplane to Chicago, and was arrested in Michigan approximately 20 days after the murders.

The State supplemented defendant's factual basis. The State's theory of the case was that defendant was guilty of murder on either account-ability or felony-murder doctrines. The security system of the store consisted, in part, of a tape recorder on which defendant's conversations with co-indictee Spicer were recorded. One victim was shot twice in the back of the head and died instantly. The second was shot in the temple, pleaded for help, got to a telephone, and died before he could converse with the person calling the store. An East St. Louis police officer was shot at by Spicer during the escape. A citizen who was driving by wrote down the license number of the murderer's automobile. The man driving the automobile was an elderly man and two men, who were dressed as defendant described himself, got into that automobile. The automobile was traced to Lorine Dixon, who stated that she had loaned the automobile to James Phillips. Police officers went to Phillips' residence and were given permission by Phillips to search the house. The officers found two leather jackets and two stocking caps. In one of the jackets, the officers found a .38 special Smith and Wesson from which the shots that killed the first victim were fired. Ballistics also confirmed that the shots which killed the second victim were from a different .38 special. Two hundred and fifteen dollars in $1 bills were found in one of the jackets. Two spent shell casings, which were found in the commode, were fired from a .38 special other than the one found to be the first victim murder weapon. The film produced 40 pictures which included pictures of Spicer and his girlfriend, Angela Perry. Other pictures depicted both defendant and Spicer with black turtleneck sweaters and leather jackets, shoulder holsters with .38's in the holsters. The pictures were taken within 50 feet of

the Phillips' residence. Phillips was convicted on all counts and was sentenced to not less than 20 nor more than 60 years on each murder count. The court did not impose sentences on Phillips' other two convictions. Phillips had testified in Spicer's trial that defendant and Spicer had forced him to drive them to the Leading Food Store. Wanda Burris, who was at the Phillips' residence, testified that on the morning of November 15, 1975, defendant, Spicer, and Phillips were gone for approximately 1 hour and 45 minutes. She would also testify as to their manner of dress. When the police arrived, Spicer asked Ms. Burris to call the St. Louis Bus Terminal in order to learn the times the buses for Chicago were leaving. Then defendant and Spicer ran out the back door. Defendant gave a statement to the police which contained admissions. Spicer also gave a statement, which implicated defendant, to the police; however, the State acknowledged that it could not use Spicer's statement in defendant's trial pursuant to *Bruton v. United States* (1968), 391 U. S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.

Defendant stated that he understood that he was pleading guilty to two counts of murder. The court admonished defendant: (1) of the minimum and maximum sentence for murder including the mandatory parole term and the possibility of consecutive sentences; (2) of his right to plead not guilty; (3) by pleading guilty defendant waived his right to trial either by jury or court; (4) by going to trial the State would have to prove him guilty beyond a reasonable doubt by bringing in witnesses whom defendant could cross-examine as to defendant's guilt; and (5) by pleading guilty, defendant waived his right to call witnesses and present evidence in his own behalf. The court explained a jury and bench trial to the defendant. In response to the court's inquiry, the defendant stated that no threats or force were used to get him to plead guilty and that he was pleading guilty of his own free will. The court specifically asked defendant if his counsel had forced him in any manner to plead guilty, and defendant responded, "No." After each right was stated to the defendant, he stated that he understood. The court specifically found based on the demeanor and manner of the defendant that the defendant was voluntarily and understandingly entering his plea of guilty. The court then accepted defendant's pleas of guilty and entered convictions on both charges of murder.

■■ Defendant's first contention of error that defendant's pleas were not voluntary because he was not admonished of his right against self-incrimination is without merit. Supreme Court Rule 402 (Ill. Rev. Stat. 1975, ch. 110A, par. 402) was substantially complied with. (*People v. Krantz* (1974), 58 Ill. 2d 187, 317 N.E.2d 559; *People v. Wills* (1975), 61 Ill. 2d 105, 330 N.E.2d 505, *cert. denied* (1975), 423 U.S. 999, 46 L. Ed. 2d 374, 96 S. Ct. 430.) The record establishes that defendant's pleas were entered

intelligently and voluntarily. *Boykin v. Alabama* (1969), 395 U. S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709.

Defendant also contends that an actual conflict existed, because the public defender's office of St. Clair County represented Spicer, Phillips, and defendant and because Phillips gave exculpatory statements which inculpated Spicer and defendant. Therefore, defendant reasons, he was deprived of effective assistance of counsel.

A voluntary plea of guilty waives all errors or irregularities that are not jurisdictional. (*People v. Brown* (1969), 41 Ill. 2d 503, 244 N.E.2d 159.) Issues waived by a plea of guilty include the defendant's right to a speedy trial (*People v. Sims* (5th Dist. 1971), 133 Ill. App. 2d 878, 272 N.E.2d 433; *People v. Sweeney* (1951), 409 Ill. 223, 99 N.E.2d 143; *People v. Lantz* (1944), 387 Ill. 72, 55 N.E.2d 78); the violation of defendant's constitutional rights by the manner in which witnesses were allowed to view and identify (*People v. Stringfellow* (1st Dist. 1972), 5 Ill. App. 3d 944, 284 N.E.2d 496; *People v. Bradford* (1st Dist. 1971), 3 Ill. App. 3d 81, 279 N.E.2d 34); the violation of defendant's rights in securing his confession by use of force by the police (*People v. Phelps* (1972), 51 Ill. 2d 35, 280 N.E.2d 203) and in violation of the mandates of *Miranda v. Arizona* (1966), 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, (*People v. Sephus* (1970), 46 Ill. 2d 130, 262 N.E.2d 914); the failure of the court to appoint counsel for defendant at the preliminary hearing (*People v. Sephus* (1970), 46 Ill. 2d 130, 262 N.E.2d 914); and defenses (*People v. Young* (1st Dist. 1974), 25 Ill. App. 3d 629, 323 N.E.2d 788). A plea of guilty also waives any claims of conflict which arise due to defendant's counsel also representing a codefendant. (*People v. Jackson* (1970), 47 Ill. 2d 344, 265 N.E.2d 622.) At no time in the trial court, including the Rule 604(d) motion, did defendant, the State or the court raise the issue of conflict of interest. Although failure to raise the issue in the Rule 604(d) motion is a waiver of the issue (*People v. Simmons* (5th Dist. 1978), 67 Ill. App. 3d 1045, 385 N.E.2d 758; see also *People v. Precup* (1978), 73 Ill. App. 3d 7, 382 N.E.2d 227), we have elected to decide the issue on its merits.

■■ The sixth and fourteenth amendments to the United States Constitution guarantees the right to the effective assistance of counsel (*People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671). The United States Supreme Court has interpreted this guarantee to mean that, although joint representation of codefendants is not a *per se* violation, to require an attorney to represent two codefendants whose interests are in conflict denies one of them the right to effective assistance of counsel. (*Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457; *Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173.) However, a defendant must show an actual conflict of interest

manifested at trial in order to prevail in a constitutional claim of ineffective assistance of counsel due to joint representation of codefendants by a single attorney. (*People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649; *People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671.) Before we arrive at the point of reversing a conviction without requiring a showing of prejudice to the defendant, a positive basis must be found for concluding that an actual conflict of interest existed. We find that no conflict existed. At the time of the guilty plea, Phillips had been tried and sentenced. There is nothing in the record nor does defendant contend that the State recommended a certain sentence in exchange for Phillips' testimony if defendant should exercise his right to a jury trial. In certain cases, any conflict may be alleviated by trying codefendants separately. (*People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671.) By not exercising his right to trial, we do not know if any actual conflict would have occurred such as having to restrict cross-examination of Phillips. Further, the public defender's office did not file a motion to withdraw in this case as in *Spicer* (see *People v. Spicer* (5th Dist. 1978), 61 Ill. App. 3d 748, 756, 378 N.E.2d 169, 173). Therefore, we believe that defendant is trying to establish a conflict where no actual conflict existed. (*People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649.) For the foregoing reasons, we find that no conflict existed in the case at bar.

■■ ■ Defendant further contends that the State failed to abide by the plea agreement. Defendant argues that the State had promised to "make no recommendation at all," but nevertheless argued for a severe sentence at the sentencing hearing. Prior to pleading guilty, the court admonished the defendant:

> "THE COURT: As I understand it, gentlemen, as I received and elicited from Mr. Good, as I understand it, gentlemen, there are no plea negotiations in this particular case, is that correct?
> MR. CONSTANCE [Defense Counsel]: That is correct.
> MR. KUEHN [State's Attorney]: That is right."

In order to further determine the understanding of the parties, the court inquired:

> "THE COURT: All right. If I understand correctly, Mr. Good, there has been no promises made to you as to what the sentence will be, is that correct, sir?
> A. No.
> THE COURT: Do you understand then that as to your sentencing that is completely on my determination, do you understand that?
> A. Right."

We note that neither in defendant's motion which was filed pursuant to Supreme Court Rule 604(d) (Ill. Rev. Stat. 1977, ch. 110A, par. 604(d)) nor

in the hearing on that motion did defendant allege as error a violation of the prosecutor's agreement to stand mute. Further, defendant did not object to the argument of the prosecutor at the sentencing hearing, and this issue is raised for the first time on appeal. Therefore, the issue should be considered waived. (*People v. Smith* (5th Dist. 1975), 28 Ill. App. 3d 908, 329 N.E.2d 896.) However, we have decided to discuss the issue. At the hearing on the motion, defendant testified that no promises were made to him in exchange for his pleas of guilty. Defense counsel discussed the case with defendant and counsel theorized that if defendant pleaded guilty, he would receive a lighter sentence than Spicer, and defendant did, in fact, receive a lighter sentence than Spicer. The defendant stated that he would not have pleaded guilty if he had known the sentences would be not less than 90 years nor more than 180 years. Defendant further testified that he would have been satisfied with the sentences if they had been 100 years on down. Therefore, based on the record before us, the only plea agreement was for the defendant to plead guilty to two murder charges in exchange for the State's dismissal of two armed robbery counts and an attempt murder count. The foregoing concession by the State was not an insignificant concession, because the factual basis for the pleas indicate that the murders were committed after the victims were rendered defenseless and the criminal objective of defendant and his accomplice had changed from the taking of the monetary possessions of the store to the wanton murders of two persons. An officer was shot at during defendant's escape. Therefore, if defendant had been convicted of all charges, he would have incurred the possibility of being sentenced to consecutive sentences. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—4 (a).) In the case at bar, we conclude that defendant's pleas of guilty were not induced by unfulfilled promises of the State and that, therefore, those pleas were not involuntary and not void. *People v. Young* (2d Dist. 1977), 52 Ill. App. 3d 671, 367 N.E.2d 976; *Santobello v. New York* (1971), 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495.

■■ A presentence report, which was not made part of the appellate court record, was prepared. From the transcript of the sentencing hearing, it appears that defendant has a lengthy criminal record including another homicide conviction. This was a particularly horrendous crime that called for a severe sentence. Both victims were unarmed and defenseless when they were shot numerous times. Other circumstances of the offense indicated that a police officer was shot as defendant made his escape. It is obvious from the factual basis for the pleas that contrary to defendant's contention, defendant personally fired the shots which killed one of the victims. Although a reviewing court has power to reduce punishments, in exercising that power, a reviewing court should consider the superior opportunity of the trial judge during trial court proceedings

to acquire information about defendant which would be helpful in determining suitable punishment. (*People v. Butler* (1976), 64 Ill. 2d 485, 356 N.E.2d 330). Considering the nature and circumstances of the two murder offenses and defendant's history and character (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1(c)(1)), we cannot say that the sentences imposed are an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Defendant testified that he would not have pleaded guilty if he thought the sentence would be in excess of 100 years. However, defendant further testified that he was aware at the time he entered his pleas of guilty that co-defendants Spicer and Phillips had been convicted after a trial, that Spicer had been sentenced to not less than 200 years nor more than 400 years, and that Phillips had been sentenced to not less than 20 years nor more than 60 years, although he only drove the automobile, did not enter the store, and did not fire any shots. The court clearly explained the sentence for murder; therefore, defendant was aware or should have been aware that the sentences he received were within the realm of possibility. The requirement that a plea of guilty be understandingly and voluntarily made does not include the requirement that defendant know in advance the limits of his sentence. See *People v. Turner* (3d Dist. 1975), 25 Ill. App. 3d 847, 323 N.E.2d 371.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

G. J. MORAN, P. J., and KUNCE, J., concur.