THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RODNEY ROBINSON, Defendant-Appellant.

Third District    Nos. 80-433, 80-407 cons.

Opinion filed February 19, 1982.—Modified opinion filed March 19, 1982.

Robert Agostinelli and Charles W. Hoffman, both of State Appellate Defender's Office, of Ottawa, for appellant.

L. Patrick Power, State's Attorney, of Kankakee (John X. Breslin, and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

This appeal was brought by the defendant-petitioner, Rodney Robinson, from an order entered in the Circuit Court of Kankakee County, denying his petition for post-conviction relief. The petitioner previously pleaded guilty to an allegation of burglary; and, pursuant to plea negotiations, the circuit court sentenced him to a term of 5 years of imprisonment to be served concurrently with a previously entered sentence of not less than 3 and not more than 9 years' imprisonment.

The only issue raised on appeal is whether comments made by the petitioner's defense counsel concerning the petitioner's parole eligibility constituted ineffective assistance of counsel. We affirm.

During the plea negotiations, the court had fully and properly advised the petitioner according to Supreme Court Rule 402 (84 Ill. 2d R. 402). Nevertheless, approximately 11 weeks after entering his guilty plea, the petitioner filed a post-conviction petition. The petition alleged that his guilty plea was unintelligent and involuntary because of the ineffective assistance of his privately retained counsel. Specifically, he asserted his defense counsel induced the petitioner to believe that the 5-year (determinate) sentence would not delay his parole eligibility on his prior 3- to 9-year (indeterminate) sentence.

At the evidentiary hearing, the State produced the testimony of the petitioner's former defense counsel; and the petitioner testified in support of his petition. Each witness' version of a discussion, which preceded the taking of the guilty plea, was consistent up to the point where the issue of parole eligibility was raised. According to counsel, he advised the petitioner that he would be eligible for parole on the indeterminate sentence after a specified period of time which counsel

could not recall at the hearing. In this regard, counsel admitted showing to the petitioner a Department of Corrections schedule indicating when he would be eligible for parole on the indeterminate sentence. Although unable to remember what he said in regard to whether the petitioner would have a parole hearing, counsel did remember advising the petitioner that if he did receive a parole hearing, it was counsel's opinion that the petitioner would not be paroled the first time. Counsel thought that due to the instant offense the parole board would continue the parole consideration until the petitioner served 2½ years of the 5-year sentence, the minimum sentence required for that sentence. He also told the petitioner that if the parole board did parole him it would not be to the streets, but it would parole him to the balance of the 5-year sentence because it could not release the petitioner until he actually served the 2½-year minimum. Counsel denied he led the petitioner to believe that he would be released when he was eligible for parole on the 3- to 9-year term regardless of how much time was left on his 5-year sentence. Counsel did tell the petitioner that accepting the 5-year term would be like not getting much time at all because the earliest that he could be paroled on the 3- to 9-year sentence was close to the 2½-year minimum required on the 5-year term. If both sentences were looked at together, the petitioner would not in truth be getting much more time on the instant offense than he actually had to serve before possibly being considered for parole on the 3- to 9-year term. But counsel specifically denied telling the petitioner that it would be like serving no time at all. Counsel also denied advising the petitioner that, because of the subsequent conviction, the parole board could "max out" the petitioner, or deny parole on the indeterminate sentence until he served the maximum term.

According to the petitioner's testimony, counsel informed him that the petitioner would probably max out on the 3- to 9-year sentence because of the instant conviction. Insofar as the maximum on the former sentence was surely more than the minimum 2½ years he would have to serve on the 5-year sentence, it would be like getting no time at all. According to the petitioner, he would be getting out at about the same time on both sentences under this sentencing scheme. The petitioner also specifically admitted that when he went before the parole board the first time he thought that it would not release him on parole. However, the petitioner did expect to be paroled on the 3- to 9-year sentence before he had completed the 5-year sentence because at the time he pleaded guilty in the case at bar, he had already served 13 months on the former sentence. It was not until March 15, 1980, when the petitioner checked with the penitentiary records office, that he discovered he was not even eligible for a parole hearing on the indeterminate sentence until he had completed the 5-year determinate sentence. Following closing arguments,

the court found that the trial court had properly admonished the petitioner, that counsel had effectively assisted the petitioner, and that the petitioner's plea of guilty was entered knowingly and voluntarily.

■■ On appeal, the petitioner contends that counsel's own testimony demonstrated he failed to properly advise the petitioner of the consequences of his guilty plea. He argues the only conclusion which can be made from counsel's comments to the petitioner was that he would be paroled prior to the completion of his determinate sentence and that the determinate sentence would not hinder his parole eligibility on the indeterminate sentence. In fact, as the petitioner correctly asserts, he must complete his determinate sentence before becoming eligible for parole on the other sentence. Assuming he receives good time credit while serving the 5-year sentence, he would complete the determinate sentence, and thus be eligible for parole on the former sentence, in November 1981. On the other hand, without the second conviction, the petitioner would have become eligible for parole on the indeterminate sentence in October 1980, according to Department of Corrections Regulations 813 and 866. Therefore, relying upon *People v. Owsley* (1978), 66 Ill. App. 3d 234, 383 N.E.2d 271, the petitioner asserts that such misadvice constitutes ineffective assistance of counsel. We disagree.

In *Owsley,* the defendant alleged, in her motion to withdraw her guilty plea, that her guilty plea had been induced by her counsel's misrepresentations concerning several freedom-related opportunities: parole eligibility, prison furloughs, and work release. She further alleged that after she had learned of the misrepresentations, her counsel advised her not to bring the issue to the attention of the trial court. Her motion, which was supported by two affidavits, was dismissed without a hearing. On appeal, this court reversed and remanded the cause for evidentiary hearing, holding that the defendant's allegations, if proved, constituted ineffective assistance of counsel. The *Owsley* court declared that a defendant should not be misled by counsel on such an important consideration as parole eligibility and other freedom-related benefits. See also *People v. Wills* (1975), 61 Ill. 2d 105, 330 N.E.2d 505, *cert. denied* (1975), 423 U.S. 999, 46 L. Ed. 2d 374, 96 S. Ct. 430.

■■ The petitioner's reliance upon *Owsley* is misplaced. At the outset, we emphasize that the factual setting upon which our review in *Owsley* was predicated is inapposite to the case at hand. In *Owsley,* the trial court *dismissed without a hearing* the defendant's allegations of ineffective assistance of counsel. To the contrary, in the present case, the trial court heard all relevant evidence and legal arguments offered on the issue of ineffective assistance of counsel and thereafter resolved issues of law and fact, ultimately ruling against the petitioner. In addition, evidence of the type of purposeful misrepresentation and concealment of counsel's ac-

tions, which prompted this court in *Owsley* to remand the cause for an evidentiary hearing, is lacking in the instant case. Furthermore, unlike the allegations of concrete and misleading declarations of the consequences of pleading guilty which were presented to this court in *Owsley*, the petitioner herein complains of what could be described as mere predictions which, if unfulfilled, do not give the petitioner a right to post-conviction relief. *People v. Ring* (1978), 59 Ill. App. 3d 852, 376 N.E.2d 363; *People v. Willis* (1977), 50 Ill. App. 3d 498, 365 N.E.2d 597.

Finally, we are not presented in the instant case with the inherent conflict situation, such as we were in *Owsley*, wherein counsel at the post-conviction proceeding was the same counsel who had allegedly afforded ineffective assistance at the defendant's hearing on the guilty plea. Accordingly, we find that the trial court did not commit error in denying petitioner's petition for post-conviction relief.

Petitioner also asked us to review separately the trial court's ruling denying his motion to withdraw his plea of guilty to the burglary charge. The appeal was consolidated with the appeal of the trial court's order denying petitioner post-conviction relief. The sole issue of both relates to whether petitioner's plea was knowingly and voluntarily given. Our opinion herein disposes of both appeals.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Kankakee County.

Affirmed.

STOUDER, J., concurs.

JUSTICE HEIPLE, specially concurring:
The issue raised in this case of ineffective assistance of counsel is at best peripheral. It is really a mere patina on the controversy. The real issue is whether defendant should be allowed to withdraw his guilty plea because of an alleged misapprehension concerning his release date from prison.

Allegedly, trial counsel failed to correctly inform defendant of his prison release date, or led him to believe his negotiated five-year sentence would not require further incarceration other than that which he was serving for a previous burglary conviction. Accordingly, defendant says he was not fully apprised of all the consequences of his guilty plea. He, therefore, concludes that his plea of guilty was involuntary and should be vacated.

Supreme Court Rule 402 (84 Ill. 2d R. 402) governs the acceptance of a plea of guilty by a trial court. Certain admonitions must be given to a

defendant before accepting his plea of guilty. These include: the nature of the charge; the maximum and minimum penalties prescribed by law as to the charged offenses, as well as possible sentencing enhancement in light of prior convictions; that if he pleads guilty he will not receive a trial of any type; that he has a right to plead not guilty; that his plea is voluntary; and, that factual basis exists for the plea. The Rule not only implements the Federal constitutional requirement but also exceeds it in the scope of its application. Ill. Ann. Stat., ch. 110A, par. 402 (Smith-Hurd Supp. 1981-1982).

Other than admonishing defendant of his mandatory parole period, nowhere in Rule 402 or in the comments on the Rule (Ill. Ann. Stat., ch. 110A, par. 402, Committee Comments, at 530 (Smith-Hurd Supp. 1981-1982) is it stated, or even suggested, that informing a defendant of parole eligibility, good-time credits, prison furloughs, or prison work-release programs are part of the required admonitions before accepting a defendant's plea of guilty.

The transcript of proceedings in this cause clearly reflects that when defendant entered his guilty plea he was thoroughly admonished by the trial judge in accordance with Rule 402. Such warnings extend over 10 pages of the record and manifest an admirable and considered undertaking in view of their breadth and completeness.

In *People v. McCoy* (1979), 74 Ill. 2d 398, the defendant filed a post-conviction petition claiming his plea of guilty was not voluntary since the trial judge failed to warn him, in addition to the possible penitentiary sentence imposed, that he would also be required to serve three years on mandatory parole following his release from prison. The controlling factor in determining whether the plea was voluntary was not "* * * literal, compliance with the provisions of Rule 402 * * *" but what the defendant knew he was to receive in terms of punishment in exchange for his agreement to plead guilty. (*People v. McCoy* (1979), 74 Ill. 2d 398, 402.) In other words, there must be a meeting of the minds concerning the specific recommendation as to the sentence and compliance with that recommendation. The Illinois Supreme Court concluded the sentence imposed (one to three years) was substantially less than the maximum sentence of 20 years, and therefore found no violation of a constitutional right. Just as the admonition in *McCoy* was sufficient, so it was in the case at bar. Accord, *Norman v. Elrod* (1979), 76 Ill. 2d 426 (per curiam).

*People v. Wills* (1975), 61 Ill. 2d 105, *cert. denied* (1975), 423 U.S. 999, 46 L. Ed. 2d 374, 96 S. Ct. 430, lends little support to the proposition the majority says it does. In *Wills* a guilty plea was held voluntary even though trial judge failed to admonish a defendant convicted of a felony that his sentence besides incarceration included a mandatory additional period of

parole. The mandatory additional parole provision was held to be a statutory requirement. (See Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1; Ill. Ann. Stat., ch. 110A, par. 402, Historical and Practice Notes, at 532 (Smith-Hurd Supp. 1981-1982).) Notwithstanding, a trial judge's failure to admonish a defendant concerning such mandatory additional parole period, such is only a factor, not a single operative fact, in determining the voluntariness of a plea of guilty. *People v. Wills* (1975), 61 Ill. 2d 105, 111 (supplemental opinion on rehearing).

Nor does the second *Owsley* appeal which is cited (*People v. Owsley* (1978), 66 Ill. App. 3d 234) support the majority's reasoning, even if *Owsley* had been correctly decided. And it was not. As the trial judge in that case, I am quite familiar with it.

Pursuant to plea negotiations Deanna Owsley entered a guilty plea to the offense of murder. She was sentenced to the agreed 14 to 20 years in prison. Later she moved to withdraw her guilty plea. The motion was denied, an appeal was perfected, and the trial court's ruling was sustained on appeal. This was the first appeal. (*People v. Owsley* (1977), 51 Ill. App. 3d 16.) Next, Mrs. Owsley filed a post-conviction petition arguing that her trial lawyer misinformed her about when she would be eligible for parole, work release, and weekend furloughs, thus rendering her plea of guilty involuntary. The People moved to dismiss the petition, indicating waiver of the issue of her trial lawyer's incompetence, or, alternatively, the matter had already been decided and therefore was *res judicata*. This court reversed the trial judge's dismissal of the post-conviction petition. (*People v. Owsley* (1978), 66 Ill. App. 3d 234, 239.) Again, the cloak of ineffective assistance of counsel allegedly had raised a constitutional question.

A post-conviction proceeding is a new proceeding for the purpose of evaluating *constitutional issues* of an original conviction not already adjudicated. If such issues were previously raised on a direct appeal of a conviction and decided, they cannot be decided anew in a post-conviction proceeding. *Res judicata* is a bar. Moreover, if the petitioner fails to assert an issue in the previous direct appeal which could have been raised, he waives the issue even if of constitutional magnitude. *People v. Cross* (1979), 77 Ill. 2d 396, 401.

In *Owsley* the record clearly shows that Deanna Owsley was aware of the alleged misinformation she received from her lawyer prior to filing a motion to vacate her plea of guilty. But she did not include either the alleged misinformation or this alleged incompetence of her trial counsel in her motion to withdraw that plea. And, when the motion to withdraw the guilty plea was disallowed and the ruling appealed with new appellate counsel appointed to represent her on appeal, she neglected to raise the issue on appeal. While she later argued that trial counsel could not be

expected to argue his own incompetency, this argument would not apply to her separate and new appellate counsel. Thus, the issue was waived. When the post-conviction petition was filed after the appeal had been decided, the trial court was correct in dismissing it without a hearing on the basis of waiver alone. The trial court was further correct in dismissing the post-conviction petition on the basis that defendant was correctly admonished pursuant to Supreme Court Rule 402. If a trial judge is not held accountable to enquire into defendant's understanding of her parole eligibility, how can misunderstanding of parole eligibility by a defendant be deemed to render her guilty plea involuntary? In short, it should not. Regrettably, this court ruled differently in the second *Owsley* appeal. And in the instant case, the majority opinion is contrary to that *Owsley* opinion. Its attempt to distinguish *Owsley* is a failure. Since I disagree with the *Owsley* opinion, I concur with the result reached in the instant case. But I do not concur with the rationale which attempts the impossible, the distinguishing of *Owsley*. The crux of the matter is that the alleged misinformation concerned a subject upon which neither the trial court nor defense counsel had either a statutory or a constitutional duty to admonish a defendant. If a trial court must enquire of a defendant about the date defendant understands he will be released from prison, need it also enquire as to defendant's understanding about the qualities of prison fare? Or about the amount of living space per prisoner in Stateville as opposed to Menard? Or about any other aspect of prison life? And is the court required to enquire into everything that was told to defendant by his or her counsel? Rule 402 does not require such inquiry. What the second *Owsley* appeal accomplished, in effect, was to modify, supplement and amend Supreme Court Rule 402. It is anathema to suggest that the appellate court has the power to amend the rules of our supreme court.

Rule 402 mandates clearly and precisely the obligation of the trial judge. Beyond that, further inquiry is not necessary unless a Rule 402 inquiry would naturally lead into further questioning based on the defendant's responses to the questions stated by the court.

In order for a defendant to be entitled to post-conviction relief, he must show a "* * * substantial denial of his rights under the constitution of the United States or of the State of Illinois * * *." (Ill. Rev. Stat. 1979, ch. 38, par. 122—1.) Here, as in *Owsley*, the trial judge, in no way, deviated from the mandates of Rule 402. The plea was intelligently and voluntarily made.

Thus, for the reasons given, I concur with the result reached by the majority but not with their rationale.