THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIE JONES, Defendant-Appellant.

First District (5th Division)   No. 84—2462

Opinion filed August 23, 1985.

James J. Doherty, Public Defender, of Chicago (Thomas W. Murphy, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Beth Herndobler, and Michael J. Clarizio, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Defendant, Willie Jones, appeals from the order of the circuit court of Cook County denying his motion to vacate his plea of guilty. Defendant contends that he was denied due process of law when, after he entered his blind plea of guilty, the State recommended a significantly longer term of imprisonment than it had offered in earlier, unsuccessful plea negotiations. Defendant also contends that he was "inadequately advised as to the consequences of his entering a blind plea of guilty."

On September 27, 1983, defendant pleaded guilty to rape, deviate sexual assault, armed robbery and aggravated kidnaping. In response to the trial court's inquiry, defense counsel acknowledged that he had not reached an agreement with the State to recommend any particular sentence. The defendant was then fully admonished by the court concerning his rights and the consequences of his plea in accordance with Supreme Court Rule 402 (87 Ill. 2d R. 402). Turning to the range of possible penalties, the court informed defendant that rape, deviate sexual assault and armed robbery are Class X felonies, and that aggravated kidnaping is a Class 1 felony. The court continued:

"On a Class X Felony, *** this Court could sentence you to the penitentiary for an exact or determinate sentence with the lowest being six years and the highest being thirty years, unless the Court were to find that the extended term provisions applied, in which case it would be as low as thirty years or as high as sixty years.

In order for the extended term provisions to apply this Court would have to find either one, that you had been convicted of a felony of the same or greater class within ten years in Illinois or, two, that this was a heinous crime with exceptionally brutal and heinous behavior indicative of wanton cruelty or, three, that the person involved, the victim, was under twelve years of age or over sixty, or was physically handicapped. And there also is a provision for [an] extended term where it's a rape which involves more than one person ***. [Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(b)(4).] So, there would be a possibility for the extended term in this case, or at least something that may be considered.

* * *

On a Class X Felony no probation, periodic imprisonment or conditional discharge may be imposed. On the Class One Felony, which is the aggravated kidnapping, the minimum sen-

tence would be four years and the highest the Court can give you being fifteen years. If the extended term provision were to be determined to apply, the lowest would be fifteen years and the highest would be thirty years.

\* \* \*

The State has indicated that they have not agreed to make any recommendation in the case. I was not party to any conference and I have not indicated to your lawyer or anybody else what I'm going to do in this case. As a matter of fact, I don't know myself right now what I'm going to do in this case, so this is what is known as a blind plea."

Following these admonishments, defendant stated that no one had made any promises to him as to what the disposition in the case would be if he pleaded guilty. Defendant also stated that no one had forced or threatened him into pleading guilty. Defendant persisted in his plea of guilty which the court accepted, subject to the presentation of a factual basis for the plea.

The parties stipulated that if the victim were called to testify, she would state that on April 2, 1983, she was working at the Jewel Food Store located at 9150 South Cottage Grove in Chicago. At approximately 8:15 p.m., the victim walked to her automobile, a 1983 Oldsmobile, which was parked across the street from the grocery store. As she approached her vehicle, defendant and another individual confronted her and, at gunpoint, forced her into her car. Defendant then drove the victim's automobile to the vicinity of 8142 South Kingston in Chicago. Defendant demanded her money and the victim gave him $16. Defendant then backed the vehicle into a garage on Kingston and ordered the victim to remove her clothing. After taking the victim's jewelry, defendant, at gunpoint, forced her to commit acts of fellatio and sexual intercourse with him. Defendant then compelled the victim to have sexual intercourse with his 13-year-old companion. Following this, defendant ordered the victim to get dressed and to give him more money. Defendant then exited from the garage and drove his companion and the victim to 84th and Commercial, when they realized they were being followed by the police. After a high-speed chase, defendant crashed the victim's automobile into a lightpole, and the vehicle came to a stop. After hearing this stipulated evidence, the trial court found defendant guilty of rape, deviate sexual assault, armed robbery and aggravated kidnaping.

At the hearing in aggravation and mitigation, the prosecutor informed the court that on three separate occasions during the offenses, defendant threatened to kill the victim. Defense counsel stipu-

lated that the victim would so testify. In mitigation, defense counsel presented character testimony from a minister, defendant's common-law wife and his mother. Defendant also testified in mitigation. Defendant admitted that he had committed the crimes but denied that he had threatened to kill the victim or that he had ordered her to have sexual intercourse with his juvenile associate. Defendant stated that he left the victim alone in the vehicle with the juvenile. Defendant also denied owning the gun that was used in the offenses, which he said that he had obtained from the juvenile, and claimed that he never had pointed the gun at the victim but merely had showed it to her.

Based upon the evidence presented, the prosecutor asked the court to impose extended-term sentences. Defense counsel, emphasizing defendant's prior record, military service and family responsibilities, characterized his conduct on April 2, 1983, as an "isolated incident in this person's life," and urged the court to impose the minimum sentence of six years. The defendant then expressed his remorse for the crimes.

After noting the factors in mitigation, the trial court commented:

"[T]his is not a case of a person knowing another person and becoming involved emotionally and using excessive force. It's a question of a kidnapping of a complete stranger, putting her through a period of terror where, if the words that he was going to kill her were not specifically expressed, it was certainly implied. And I certainly believe that from the discussions concerning the effort to get additional money, that the victim believed that her life was probably seriously imperiled.

And this apparently took place over a period of time, the sexual acts, the threats and the terror. And I suppose that, though, there was no physical injury, the mental trauma in this type of an issue is so great, as in many instances, to be a lot worse than physical trauma.

Now, the defendant admittedly left the car and left the woman in the car with the juvenile. There is no explanation why he left the car. I am constrained to believe beyond any reasonable doubt that the defendant left with the purpose of permitting the juvenile and did have knowledge [that] the juvenile would also have sexual intercourse with the victim."

The court found that defendant's conduct was "accompanied by exceptional and heinous behavior indicative of wanton cruelty." The court also found that defendant was eligible for an extended-term sentence for rape under section 5—5—3.2(b)(4) of the Unified Code of

Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(b)(4)). The court then sentenced defendant to serve four concurrent extended terms of 35 years each for rape, deviate sexual assault and armed robbery, and 20 years for aggravated kidnaping.

Defendant thereafter filed a motion to vacate his guilty plea. The motion alleged that he did not fully understand the consequences of his plea of guilty, and that he entered his plea only on the basis of certain inaccurate representations made by his trial counsel as to the sentence he would receive.

At the hearing on defendant's motion, his trial counsel, Brian David, testified that he had spoken with Assistant State's Attorney Robert Moore regarding the possibility of a plea agreement. David indicated that as a result of his conversations with Moore he discovered that the State would recommend a sentence of 18 years, or perhaps as low as 15 years, in exchange for defendant's plea of guilty. Since defendant had no prior criminal record, David did not believe that the State's offer was a fair disposition and advised his client to reject it. On several occasions David informed defendant that the minimum sentence for rape was six years and expressed the opinion that defendant would receive a sentence closer to the minimum than to what the State had offered in plea negotiations. David advised defendant that he "felt that the State's offer was higher than what [he] thought was reasonable." He cautioned defendant, however, that there was no guarantee that the court would impose the minimum sentence. While David acknowledged that there had been no agreement with the State's Attorney's office regarding the sentence to be imposed, he testified that the State never had discussed a sentence in excess of 18 years. He could not recall discussing with defendant the possibility of receiving a sentence in excess of 18 years or an extended-term sentence.

On cross-examination David conceded that he did not consider defendant's case to be "triable." He also admitted that the State never agreed to make any recommendation to the court in exchange for defendant's blind guilty plea. The State had offered to recommend a sentence of 18 years (or 15 years) only on the condition that David would recommend the same sentence to the court, which he refused to do.

Defendant also testified in support of his motion to vacate and corroborated the testimony of his defense attorney. Defendant stated that he pleaded guilty because his attorney had advised him that the trial court probably would not sentence him to serve a term of more than 10 years, and that the court might sentence him to serve the

minimum term of six years. Defendant never anticipated receiving a sentence greater than the 15- to 18-year term offered by the State in plea discussions. Although defendant admitted that the trial court had advised him of the sentences he could receive, including the possibility of extended-term sentences, he testified that he had ignored the court's admonitions, explaining that he had listened only to what his attorney had told him. On cross-examination, defendant conceded that he had presented the motion to withdraw his guilty plea, in part, because he had expected more leniency from the court. He also acknowledged that he had told the court that he understood the possible sentences, that the plea was voluntarily entered and that the State never agreed to make any recommendation on his behalf.

The court denied defendant's motion to vacate his guilty plea, finding that there was no misrepresentation by Assistant State's Attorney Moore regarding the sentence to be imposed; that there was no agreement to make a sentencing recommendation; that defense counsel never advised defendant that he was going to receive a specific sentence but merely made a prediction as to the likely sentence to be imposed; and that defendant was fully advised by the court regarding the range of possible penalties. This appeal follows.

Defendant contends that he was denied due process of law when, after he entered his blind plea of guilty, the State recommended a significantly longer term of imprisonment than it had offered in earlier, unsuccessful plea negotiations. Defendant submits that the State's decision to seek an extended-term sentence after he had rejected its offer of an 18-year (or 15-year) sentence is evidence of prosecutorial vindictiveness. Defendant also contends that he was "inadequately advised as to the consequences of his entering a blind plea of guilty." We find no merit in either contention.

In support of his claim of prosecutorial vindictiveness, defendant relies primarily on the Supreme Court's decisions in *North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072, and *Blackledge v. Perry* (1974), 417 U.S. 21, 40 L. Ed. 2d 628, 94 S. Ct. 2098. In our opinion, neither decision is dispositive of the issue presented in the instant appeal.

In *North Carolina v. Pearce*, the Supreme Court held that the due process clause of the fourteenth amendment "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." (*North Carolina v. Pearce* (1969), 395 U.S. 711, 725, 23 L. Ed. 2d 656, 669, 84 S. Ct. 2072, 2080.) The same principle was later applied in *Blackledge v. Perry* to prohibit a prosecutor from

reindicting a convicted misdemeanant on a felony charge after the defendant had invoked an appellate remedy, since in this situation there was also a "realistic likelihood of 'vindictiveness.' " *Blackledge v. Perry* (1974), 417 U.S. 21, 27, 40 L. Ed. 2d 628, 634, 94 S. Ct. 2098, 2102.

The Supreme Court has noted that in *Pearce* and *Perry* it was dealing with "the State's unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction—a situation 'very different from the give-and-take negotiation common in plea bargaining between the prosecution and defense, which arguably possess relatively equal bargaining power.' " (*Bordenkircher v. Hayes* (1978), 434 U.S. 357, 362, 54 L. Ed. 2d 604, 610, 98 S. Ct. 663, 667, quoting Justice Brennan's opinion in *Parker v. North Carolina* (1970), 397 U.S. 790, 809, 25 L. Ed. 2d 785, 799, 90 S. Ct. 1458, 1479-80.) The court has emphasized that "the due process violation in cases such as *Pearce* and *Perry* lay not in the possibility that a defendant might be deterred from the exercise of a legal right, *** but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction." *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 363, 54 L. Ed. 2d 604, 610, 98 S. Ct. 663, 667-68.

The Supreme Court has recognized that to punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is patently unconstitutional. (*Bordenkircher v. Hayes* (1978), 434 U.S. 357, 363, 54 L. Ed. 2d 604, 610, 98 S. Ct. 663, 668.) The court has determined, however, that "in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." (434 U.S. 357, 363, 54 L. Ed. 2d 604, 610-11, 98 S. Ct. 663, 668.) Thus, in *Bordenkircher*, the Supreme Court held that the due process clause of the fourteenth amendment did not prohibit a prosecutor from carrying out a threat, made during plea negotiations, to bring additional charges against an accused who refused to plead guilty to the offense with which he was originally charged.

■ The thrust of defendant's argument is that to avoid the appearance of vindictiveness against a defendant who rejects an offer made during plea discussions and thereafter exercises his right to stand trial or to enter an unnegotiated plea of guilty, the prosecutor may never seek a greater penalty than that offered in the unsuccess-

ful plea negotiations. As the foregoing analysis suggests, however, the Supreme Court has declined to impose any such restrictions on the plea bargaining process. In *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 364, 54 L. Ed. 2d 604, 611, 98 S. Ct. 663, 668, the court stated:

> "While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.' *Chaffin v. Stynchcombe* [(1973), 412 U.S. 17], at 31. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forego his right to plea not guilty."

The Illinois Supreme Court opinions are in accord with this reasoning. See *People v. Yates* (1983), 98 Ill. 2d 502, 534-35, 465 N.E.2d 1369; *People v. Lewis* (1981), 88 Ill. 2d 129, 148-49, 430 N.E.2d 1346.

We understand that, unlike the facts in the case at bar, where defendant rejected a negotiated plea and entered a blind plea of guilty, the defendants in the foregoing decisions rejected offers in pretrial discussions and thereafter stood trial. We do not believe that this distinction is constitutionally significant, however, or that it renders the analysis of the law in those cases inapplicable to the facts before us. (See *People v. Walker* (1981), 84 Ill. 2d 512, 520-21, 419 N.E.2d 1167.) The gist of the defendant's argument in each situation remains the same, *i.e.,* that he has been penalized for exercising a procedural right.

In support of his argument, defendant also relies on the plurality opinion in *People v. Walker* (1981), 84 Ill. 2d 512, 419 N.E.2d 1167. We believe that this reliance has been misplaced.

In *Walker*, defense counsel and the State's Attorney concluded a plea bargain in which the defendant agreed to plead guilty to murder, armed robbery, armed violence and four counts of attempted murder. The State agreed to recommend a 60-year prison term for murder and other sentences for concurrent terms. In explaining the terms of the indictment, the court inaccurately advised the defendant that "the range of sentencing could be 40 to 80 years," whereas the indictment's terms, alleging murder and armed robbery, justified a death sentence hearing. (84 Ill. 2d 512, 514-15.) Since the State's Attorney took a leading role in those proceedings, and did not chal-

lenge the court's admonitions on the murder count, three justices in *Walker* found that the State's Attorney had unmistakably adopted the position that 80 years was the maximum penalty for his crimes." (84 Ill. 2d 512, 523.) Defendant subsequently successfully withdrew the negotiated guilty plea and later entered an unnegotiated guilty plea which resulted in the State's seeking, and obtaining, a sentence of death.

Citing *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 54 L. Ed. 2d 604, 98 S. Ct. 663, the plurality opinion in *Walker* recognized that the prosecutor has a constitutionally legitimate interest in persuading a defendant to forego his right to plead not guilty, and that "defendants who make knowing, voluntary, and intelligent choices to risk an increased sanction rather than plead guilty pursuant to a plea bargain will be held to that choice." (84 Ill. 2d 512, 522.) However, the opinion cautioned that the legitimacy of the latter principle "depends upon a defendant's knowing, voluntary, and intelligent evaluation of the risks involved." (84 Ill. 2d 512, 522.) The *Walker* opinion noted (84 Ill. 2d 512, 522) that in *Bordenkircher* the Supreme Court expressly distinguished and left unresolved cases "where the prosecutor without notice brought an additional and more serious charge after plea negotiations relating only to the original indictment had ended with the defendant's insistence on pleading not guilty." (434 U.S. 357, 360, 54 L. Ed. 2d 604, 609, 98 S. Ct. 663, 666.) In *Walker*, three justices of the Illinois Supreme Court stated that "[i]t requires no spectacular leap of logic to conclude that under our unique murder statute and given the qualitative difference between death and other penalties, the possibility of a death sentence, if not revealed to a defendant, should be treated for the purposes at hand as an 'additional and more serious charge.'" (84 Ill. 2d 512, 522.) The plurality opinion therefore concluded that "we face the issue deliberately left open in *Bordenkircher* and believe that the vindictiveness principles [of *North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072, and *Blackledge v. Perry* (1974), 417 U.S. 21, 40 L. Ed. 2d 628, 94 S. Ct. 2098] are triggered when a prosecutor without notice increases the possible sanction severity for no valid reason after the defendant has exercised a procedural right." 84 Ill. 2d 512, 523-24.

In our judgment, *Walker* is not dispositive of the issue raised in this appeal for a variety of reasons. First, we observe that after *Walker* was decided, the United States Supreme Court addressed the issue left unresolved in *Bordenkircher* and refused to presume vindictiveness from a prosecutor's decision, made without notice to the

defendant, to indict the defendant on felony charges after he had refused to plea guilty to misdemeanor charges arising out of the same incident and had demanded a jury trial. (See *United States v. Goodwin* (1982), 457 U.S. 368, 73 L. Ed. 2d 73, 102 S. Ct. 2485.) Second, *Walker* involved a death sentence, which the court treated as an "additional and more serious charge" for purposes of the exception carved out in *Bordenkircher*. In the case at bar, no new charges were brought against defendant after he rejected the State's offer of an 18-year (or 15-year) sentence, and the death penalty was not a possible sentence. Third, in *Walker*, the State sought the death penalty only after defendant successfully had challenged his plea of guilty. Here, the State recommended extended-term sentences upon defendant's original plea. Fourth, and perhaps most important, in *Walker*, defendant was not advised that he could be sentenced to death when he entered his original plea of guilty. In the instant case, however, defendant was fully and carefully admonished that extended-term sentences could be imposed. (See *People v. Yates* (1983), 98 Ill. 2d 502, 534-35, 465 N.E.2d 1369; *People v. Lewis* (1981), 88 Ill 2d 129, 148-49, 430 N.E.2d 1346.) His contention that he was not adequately advised of the consequences of his entering a blind plea of guilty is thoroughly discredited by an examination of the transcript of the proceedings at which he changed his plea.

In his brief, defendant states:

> "Had the State advised the defendant or his attorney that by deciding to enter a blind plea of guilty and [by] not accepting the offered fifteen years the defendant was risking the possibility of receiving a sentence more than twice what was offered, the defendant's decision to enter a blind plea would have been intelligent, knowing and voluntary."

■■ In our judgment, defendant has misconceived the respective roles of the court and the prosecutor in hearings on pleas of guilty. It is the responsibility of the court, not the prosecutor, to inform the defendant of the minimum and maximum sentence prescribed by law for the offense to which he is pleading guilty. (87 Ill. 2d R. 402(a)(2).) Here, the defendant was properly admonished as to the range of penalties, including the possibility of extended-term sentences. The requirement that a plea of guilty be understandably and voluntarily made does not include the requirement that defendant know in advance whether the State's Attorney will make a sentence recommendation, and it does not require that the defendant know in advance the sentence which will be imposed. *People v. Turner* (1975), 25 Ill. App. 3d 847, 851, 323 N.E.2d 371; *People v. Good* (1979), 68 Ill.

App. 3d 333, 341, 385 N.E.2d 911.

■■ In the case at bar, defense counsel testified on defendant's motion to withdraw his guilty plea that he never promised defendant or his family that he would receive a sentence closer to the minimum of six years than to the 18-year (or 15-year) sentence offered by the State in plea discussions. Counsel merely expressed the "opinion" and "felt" that the State's offer was "higher than what [he] thought was reasonable," and cautioned defendant that he could not "guarantee what the judge would do ***." Defendant never testified that his counsel promised that he would receive a particular sentence. The mere belief or hope of a defendant that he will get a shorter sentence by pleading guilty does not permit him to withdraw his plea when that expectation is disappointed. (*People v. Ring* (1978), 59 Ill. App. 3d 852, 853, 376 N.E.2d 363.) A guilty plea made in reliance upon advice of counsel estimating a sentence to be expected is a voluntary plea. (*People v. Willis* (1977), 50 Ill. App. 3d 498, 504, 365 N.E.2d 597.) The use of the words "opinion" and "felt" by defense counsel in his testimony connotes a prediction rather than a promise, and such a prediction, when unfulfilled, does not give defendant a right to withdraw his plea of guilty. (*People v. Willis* (1977), 50 Ill. App. 3d 498, 504; *People v. Robinson* (1982), 103 Ill. App. 3d 1084, 1088, 432 N.E.2d 313.) Accordingly, we find no error in the court's denial of defendant's motion to withdraw his plea of guilty. Pursuant to *People v. Jordan* (1984), 103 Ill. 2d 192, 469 N.E.2d 569, however, we reduce defendant's sentence for aggravated kidnaping to 15 years.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed, as modified. Pursuant to *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194, we grant the State's request that defendant be assessed $50 as costs for the State's defending this appeal and incorporate it as part of the judgment.

Affirmed, as modified.

LORENZ and SULLIVAN, JJ., concur.