THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES ADKINS, Defendant-Appellant.

(Nos. 57270, 57384 cons.;

First District (3rd Division)—December 6, 1973.

*Rehearing denied January 10, 1974.*

Jerome Rotenberg, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis, Thomas A. Mauet, and Ferdinand M. Minelli, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DEMPSEY delivered the opinon of the court:

A jury found Charles Adkins guilty of aggravated assault upon John Baskin and he was sentenced to the penitentiary for a term of one to five years. Adkins does not contend that the evidence did not prove him guilty beyond a reasonable doubt, but he asserts that trial errors deprived him of a fair trial and that his sentence was both improper and excessive.

In the late afternoon of May 22, 1971, Baskin, a 17-year-old high school student, and his friend, Michael Cameron, were in the vicinity of 66th Street and Parnell Avenue, Chicago. Baskin testified that Adkins, accompanied by Roy Coppage and Anthony Mason, approached him and, after a brief conversation, said he was going "to mess him up"; he also said, "We are going to pump some lead into these punks." Adkins hit him on the head, kicked him in the leg and struck him on the side of the head with a gun. Adkins then gave the gun to Mason and Baskin started to run. Adkins told Mason to "burn him"; Baskin heard a shot, but kept running until he reached the corner of 66th and Normal Avenue, where he hailed a police car.

One of the policemen in the squad car, Joseph Wilburn, testified that he saw Adkins and other men coming through a gangway. The officer shouted, "Hold it, police officer." Adkins pointed a gun at Wilburn, who fell to his knees. Adkins fired two shots and Wilburn one. Adkins and his companions then ran into a house on Parnell Avenue and were followed by Wilburn who arrested Adkins and Coppage.

Adkins testified that neither he nor Anthony Mason carried guns on May 22nd, but that Roy Coppage had one. He stated that when Coppage's gun was discharged he ran into the house on Parnell Avenue. He denied shooting at either Baskin or Wilburn. His testimony was corroborated by Coppage, who testified that it was he who had the gun and that it went off twice.

■■ Mason was called as a defense witness. During his direct examination he was asked, "At this time, did Charlie Adkins, while you were standing there talking to Baskin, did Charles Adkins give you a gun? * * *. All right, on this particular day, did you at any time shoot a gun at John Baskin?" The State objected to the questions as being leading and the trial court sustained the objections and admonished the defense attorney not to lead the witness. The defendant contends that the rulings of the court were not only erroneous but prejudicial inasmuch as the testimony intended to be elicited "went to the very heart of the case", that is, whether Adkins gave a gun to Mason with instructions to shoot Baskin. The test of a leading question is whether it suggests the

answer by putting into the mind of the witness the words or thought of the answer. (*People v. Schladweiler* (1925), 315 Ill. 553, 146 N.E. 525.) Questions merely directing the attention of a witness to the subject matter of an inquiry are not suggestive or leading. *People v. Elliott* (1916), 272 Ill. 592, 112 N.E. 300.

■■ When considered in context, and the purpose for which they were asked, the questions cannot be regarded as leading. The defense counsel had the right to ask the questions in the form that he did. Baskin had testified that Adkins gave Mason a gun and that it was held by Mason when the shot was fired. Mason, as well as the defendant, had the right to contradict these accusations. Asking him whether Adkins gave him a gun and whether he shot at Baskin afforded him the opportunity of denying them. The questions were material and relevant, and the anticipated answers were important to Adkins' defense. The objections to the questions should have been overruled.

This error alone might not warrant a reversal of the defendant's conviction if it were the only one in the case. However, there was another error of greater magnitude: the closing argument of the prosecutor transcended the bounds of propriety in several respects.

The prosecutor told the jury that an acquittal would be telling the community that the defendant was *again* at liberty, and he stated that a finding of not guilty would be telling the community that the defendant could do what he wanted to do and once *again* be acquitted. He also placed the credibility of the State's Attorney's office behind the indictment by stating that the assistant State's Attorney, who prepared the complaint against the defendant, would have not submitted it to the court if he did not believe there was culpability.

■■ There was no evidence in the case that Adkins had ever been incarcerated or that he had ever been tried for a criminal offense. The prosecutor's statement that if there were an acquittal Adkins would again be at liberty implied that he had been previously imprisoned. The statement that if there was a finding of not guilty he would once again be acquitted implied that he had been tried for a prior criminal offense or offenses. Both statements were not only unfounded but flagrantly prejudicial. Vouching for the strength of the State's case because an assistant State's Attorney thought the defendant was culpable was also improper. The defendant had the right to be judged by the evidence in court, not by what some prosecutor might have thought of his guilt.

The errors deprived the defendant of a fair trial and compel the reversal of the judgment. The cause is remanded for a new trial.

_Reversed and remanded with directions._

McNAMARA and McGLOON, JJ., concur.