THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CLYDE CORNELL PEGRAM, Defendant-Appellant.

First District (2nd Division)   No. 85—213

Opinion filed February 3, 1987.

Steven Clark and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Bonnie Meyer Sloan, and Frank J. Savaiano, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant appeals his conviction by a jury for armed robbery, his sentence of 12 years' imprisonment, and a fine imposed of $20. He presents as issues on appeal whether: (1) the circuit court erred in failing to instruct the jury on the affirmative defense of compulsion; (2) the prosecutor's questions on cross-examination and comments in closing argument concerning defendant's post-arrest silence were plain error; (3) the circuit court erred in not permitting defendant to testify regarding his state of mind at the time of the crime; (4) the circuit court abused its discretion in permitting defendant to be impeached by a prior felony conviction; (5) the prosecutor improperly shifted the burden of proof with respect to credibility of prosecution witnesses; (6) defendant was denied the effective assistance of counsel; and (7) the circuit court erred in imposing a $20 fine without considering defendant's financial resources. We reverse and remand for a new trial for reasons set forth below.

On January 9, 1982, at about 5:30 a.m., an armed robbery occurred in a tavern on West Montrose Avenue, Chicago. Owner John Mackin arrived at the tavern alone, shortly after 5 a.m. While counting that night's receipts of about $5,000 to $6,000, he heard a knock on the door and saw defendant, who he knew as "Cornell," a friend of his porter, Bob Tatum. Defendant sometimes assisted Tatum and had worked at the tavern at least 20 times prior to the robbery, but never without Tatum. Defendant considered himself a part-time custodian at the tavern and claimed to have worked for Mackin for about one year, usually three to four times per week.

According to Mackin, defendant explained that Tatum's car had broken down, Tatum would arrive later, and defendant came ahead to start cleaning up. Defendant testified he and Mackin just said good morning. Mackin let defendant in and defendant began work by taking the garbage out through the back door.

Defendant testified that after he unlocked the gate, two men appeared with pistols, wearing dark clothing and using scarves, stockings, and masks to hide their faces. They threatened to kill him if

he did not cooperate. After learning that Mackin was in the building, the robbers put a pistol to defendant's head and forced him to take them to Mackin.

The three men entered the office while Mackin was counting his receipts. One of the masked men put a gun to Mackin's head and ordered him to hand over the cash in his pockets. According to Mackin, defendant then opened the freezer and all three men pushed him inside. Mackin denied hearing any conversation between the masked men and defendant and believed defendant could have escaped if he so desired. Defendant testified that the masked men first asked what the freezer was, then ordered him at gunpoint to open it. Mackin entered the freezer on the robbers' orders. Defendant asserted that no one pushed Mackin into the freezer.

Defendant shut the freezer and then lay on the floor following the robbers' orders while they ransacked the office. Next the robbers forced defendant into Mackin's car and drove off. The masked men let defendant out on an expressway, warning him they knew about him and would kill him. Mackin escaped from the freezer but found all three men, his car, and the money gone.

Defendant never returned to work at the tavern or telephoned Mackin. The police obtained an arrest warrant for defendant while unsuccessfully searching for him. Defendant did not call the police or Mackin, fearing the police would say he had something to do with the robbery because he was black, as were the two robbers, and he was previously convicted of a felony. Defendant stayed in the Chicago area, changing his address a number of times, until December 1983 when he went to visit his family in Ohio. Police testified that on April 10, 1984, defendant was stopped while crossing the border from Canada to New York and was brought back to Chicago. Defendant testified he was stopped when entering Canada.

The State charged defendant with armed robbery, armed violence, and unlawful restraint. (Ill. Rev. Stat. 1981, ch. 38, pars. 18—2(a), 33A—2, 10—3(a).) A jury convicted defendant of armed robbery. He was sentenced and fined as previously noted. Defendant appeals.

I

Defendant contends that plain error occurred under Supreme Court Rule 451(c) (87 Ill. 2d R. 451(c)) when the circuit court failed to instruct the jury on the theory of compulsion. Two pattern instructions could have been given, Illinois Pattern Jury Instructions, Criminal, Nos. 24—25.21, 24—25.21A (2d ed. 1981) (hereinafter IPI Criminal 2d).

■ The circuit court instructed the jury only on the definition and elements of armed robbery and on the presumption of innocence and burden of proof, IPI Criminal 2d Nos. 14.01, 14.02, 2.03. Although argument of defense counsel made some reference to the theory, defendant maintains that he did not adequately inform the jury of the State's burden to disprove compulsion beyond a reasonable doubt, resulting in an unreliable jury verdict. Once the affirmative defense of compulsion is raised by some evidence, as in this case, the State must overcome the defense beyond a reasonable doubt. (Ill. Rev. Stat. 1981, ch. 38, pars. 3—2, 7—11, 7—14. See *People v. Jackson* (1981), 100 Ill. App. 3d 1064, 1067, 427 N.E.2d 994.) In the present case, defendant testified that the masked robbers threatened to kill him if he did not cooperate, held a pistol to his head, and ordered him to open the freezer and locate Mackin's car.

■ The State asserts defendant waived this issue by failing to request compulsion instructions, failing to object to the proposed instructions, and failing to raise this question in its post-trial motion. Generally, such failures waive the issue; however, Supreme Court Rule 451(c) (87 Ill. 2d R. 451(c)) provides that substantial defects in instructions are not waived if the interests of justice so require. (See *People v. Thurman* (1984), 104 Ill. 2d 326, 329, 472 N.E.2d 414; *People v. Berry* (1984), 99 Ill. 2d 499, 503-04, 460 N.E.2d 742.) This exception applies to correct grave error or when cases are so factually close that fundamental fairness requires proper instructions. *People v. Thurman* (1984), 104 Ill. 2d 326, 329-30, 472 N.E.2d 414; *People v. Berry* (1984), 99 Ill. 2d 499, 505, 460 N.E.2d 742.

■ The circuit court must properly instruct the jury on the elements of the crime, the presumption of innocence, and the burden of proof. (*People v. Parks* (1976), 65 Ill. 2d 132, 137, 357 N.E.2d 487; *People v. Sanders* (1984), 129 Ill. App. 3d 552, 563, 472 N.E.2d 1156.) It is important that jury instructions contain all the issues involved in an offense. (*People v. Thurman* (1983), 120 Ill. App. 3d 975, 981, 458 N.E.2d 1038, *aff'd in part, rev'd in part* (1984), 104 Ill. 2d 326, 472 N.E.2d 414. See IPI Criminal 2d No. 24—25.00, Introduction, at 548 (an affirmative defense should be included in the instruction covering elements of the crime).) Failure to provide essential jury instructions deprives the accused of a fair trial. *People v. Sanders* (1984), 129 Ill. App. 3d 552, 563, 472 N.E.2d 1156; *People v. Williams* (1983), 120 Ill. App. 3d 900, 904, 458 N.E.2d 1312.

In the case *sub judice*, there is no language contained in the instruction on the elements of armed robbery indicating that defend-

ant acted or did not act under compulsion. (IPI Criminal 2d No. 14.02.) Absent an instruction on compulsion, a vital issue in the case was missing. Since no instruction dealt with compulsion, it cannot be said that the jury instructions taken as a whole fully provided applicable law. See *People v. Hartfield* (1985), 137 Ill. App. 3d 679, 689, 484 N.E.2d 1136; *People v. Goff* (1985), 137 Ill. App. 3d 108, 115-16, 484 N.E.2d 414.

Closing arguments by counsel did not directly address the issue of the State's burden to disprove compulsion beyond a reasonable doubt, although defense counsel mentioned duress and defendant's fear for his life. (See *People v. Clevenger* (1985), 130 Ill. App. 3d 1087, 1092, 475 N.E.2d 290; see also *People v. Huckstead* (1982), 91 Ill. 2d 536, 545, 440 N.E.2d 1248.) The court in the instant case informed the venire at the outset of the trial that it would provide instructions to them only at the close of all the evidence. The omission of a compulsion instruction was not remedied thereby either through remarks of counsel or the court. *People v. Cage* (1986), 146 Ill. App. 3d 726, 731-32, 497 N.E.2d 386.

■ Accordingly, under Supreme Court Rule 451(c) (87 Ill. 2d 451(c)), waiver does not apply to the present circumstances and defendant is entitled to a new trial at which instructions on compulsion should be given if the evidence then so warrants. *People v. Creach* (1979), 69 Ill. App. 3d 874, 897, 387 N.E.2d 762, *aff'd on other grounds* (1980), 79 Ill. 2d 96, 402 N.E.2d 229, *cert. denied* (1980), 449 U.S. 1010, 66 L. Ed. 2d 447, 101 S. Ct. 564; *People v. Adcock* (1975), 29 Ill. App. 3d 917, 920, 331 N.E.2d 573.

Since other issues raised may recur at the new trial, they now also will be considered.

## II

Defendant argues that prosecutorial cross-examination and closing argument constituted plain error, impermissibly penalizing defendant's right of post-arrest silence. Those questions and comments, the State responds, were proper in view of defendant's testimony on direct examination. The State also claims waiver by defendant's failure to object at trial or raise the issue in his post-trial motion. Further, the defense cross-examined a State witness on this subject.

The State may clarify testimony given by a defendant on direct examination concerning conversations with an arresting officer. (*People v. Jones* (1977), 45 Ill. App. 3d 967, 360 N.E.2d 534; see *People v. Beardsley* (1985), 139 Ill. App. 3d 819, 828, 487 N.E.2d 731; *cf.*

*People v. Wilson* (1984), 123 Ill. App. 3d 798, 804, 463 N.E.2d 890.) Defense counsel asked a detective four questions on cross-examination relating to post-arrest conversations between him and defendant during which the detective stated he asked defendant if he wanted to talk to him, which defendant refused to do. Defense counsel later asked defendant if the police had questioned him after the arrest and defendant replied, "no." A prosecutor on cross-examination of defendant clarified the conflicting testimony, as defendant admitted the detective had asked him questions. The prosecutors did ask defendant if he had ever claimed compulsion to a law-enforcement official and in their closing argued defendant had not given his version of the crime earlier; however, these and other comments were primarily aimed at defendant's prearrest silence. (*People v. Graves* (1986), 142 Ill. App. 3d 885, 889-90, 492 N.E.2d 517. See *Jenkins v. Anderson* (1980), 447 U.S. 231, 65 L. Ed. 2d 86, 100 S. Ct. 2124.) Further, this was not the extensive cross-examination found erroneous in *People v. Rush* (1978), 65 Ill. App. 3d 596, 602-06, 382 N.E.2d 630.

■ The prosecution may pursue a line of inquiry which defendant has invited (*People v. Seider* (1981), 98 Ill. App. 3d 175, 183, 423 N.E.2d 1217; *People v. Saulsbury* (1977), 55 Ill. App. 3d 663, 666, 371 N.E.2d 165), and he may not complain of testimony on cross-examination elicited by defense counsel (*People v. Hambrick* (1979), 68 Ill. App. 3d 447, 451, 386 N.E.2d 455; see also *People v. Randall* (1980), 84 Ill. App. 3d 888, 891-92, 405 N.E.2d 1269). Prosecutorial questions and remarks concerning post-arrest silence are generally improper (*United States ex rel. Allen v. Franzen* (7th Cir. 1981), 659 F.2d 745, 748, *cert. denied* (1982), 456 U.S. 1023, 72 L. Ed. 2d 142, 102 S. Ct. 1722; *People v. McMullin* (1985), 138 Ill. App. 3d 872, 876-77, 486 N.E.2d 412); however, by his cross-examination of the detective and his question to defendant concerning post-arrest silence on direct examination, defense counsel opened the issue and invited the prosecutor's questions and comments. See *People v. Lykins* (1978), 65 Ill. App. 3d 808, 815, 382 N.E.2d 1242, *cert. denied* (1980), 445 U.S. 952, 63 L. Ed. 2d 787, 100 S. Ct. 1602. *Cf. United States v. Shue* (7th Cir. 1985), 766 F.2d 1122, 1131; *United States ex rel. Saulsbury v. Greer* (7th Cir. 1983), 702 F.2d 651, 653, 655-56, *cert. denied* (1983), 461 U.S. 935, 77 L. Ed. 2d 310, 103 S. Ct. 2104.

Accordingly, defendant's rights were not violated and no reversible error occurred in this regard.

### III

Insisting that he was denied a fair trial, defendant claims he was prevented from testifying as to his state of mind during the robbery. The State asserts that the defense questions were leading, that other competent evidence of defendant's state of mind was presented to the jury, and that defendant waived the issue by failing to include it in his post-trial motion.

The circuit court refused to allow defendant to answer two questions: "Did you feel you had a choice to lie to them?" and "Were you acting under duress and in fear of your life?" Both questions were leading (see *People v. Harris* (1956), 8 Ill. 2d 431, 436-37, 134 N.E.2d 315; *People v. Adkins* (1973), 16 Ill. App. 3d 394, 395-96, 306 N.E.2d 709) and unwarranted even when defendant's state of mind is at issue. *People v. Harris* (1956), 8 Ill. 2d 431, 436, 134 N.E.2d 315.

A criminal defendant may testify directly to his motive, belief, or intention where it is material to the issue to be proved. (*People v. Biella* (1940), 374 Ill. 87, 89, 28 N.E.2d 111; *People v. Wallace* (1981), 100 Ill. App. 3d 424, 427, 426 N.E.2d 1017.) Rejecting evidence is not prejudicial error, however, where other sufficient evidence presents the same defense. (*People v. Sergey* (1985), 137 Ill. App. 3d 971, 976, 485 N.E.2d 506; see *People v. Hoddenbach* (1983), 116 Ill. App. 3d 57, 61, 452 N.E.2d 32.) Reversible error is not committed in sustaining an objection to a question if counsel is not precluded from rephrasing that question. *People v. Williams* (1981), 97 Ill. App. 3d 394, 404, 422 N.E.2d 1091; but see *People v. Christen* (1980), 82 Ill. App. 3d 192, 194-97, 402 N.E.2d 373.

■ In the case *sub judice*, defense counsel did not rephrase his questions. Nevertheless defendant testified that he did not contact the police because he was frightened, providing some state-of-mind evidence to support a defense of compulsion. Although this testimony concerned defendant's state of mind after the robbery and lacked direct value for his state of mind during the robbery (*People v. Wallace* (1981), 100 Ill. App. 3d 424, 428, 429, 426 N.E.2d 1017), it was strong inferential evidence supporting compulsion. Arguably, defendant not only feared the robbers because they threatened his life even after he was out of their physical presence, but feared them even more when they allegedly threatened his life, held a gun on him, and directed his involvement in the commission of the crime. Defense counsel argued defendant's fear of the robbers in his closing statement. Considering the questions actually asked, the failure of counsel to rephrase the questions, and the totality of the evi-

dence and arguments, we find no reversible error.

## IV

■ Defendant next identifies error in the admission in evidence of defendant's prior felony conviction because its prejudice exceeded its probative value. The State asserts the conviction was properly used for impeachment since defendant's release from incarceration was within 10 years of the instant trial.

The admission of impeachment evidence by conviction of a crime punishable by death or imprisonment of more than a year, or involving dishonesty or false statement, is discretionary unless the court finds that its prejudice outweighs its probative value. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 516, 519, 268 N.E.2d 695; *People v. Burba* (1985), 134 Ill. App. 3d 228, 479 N.E.2d 936.) The conviction is only admissible if less than 10 years has elapsed since the later date of release from confinement or conviction. *People v. Montgomery* (1971), 47 Ill. 2d 510, 516, 268 N.E.2d 695; *People v. Yost* (1980), 78 Ill. 2d 292, 294-97, 399 N.E.2d 1283.

The instant trial began November 26, 1984. Defendant's release from prison on June 12, 1975, was within 10 years of the current trial. Defendant was convicted of a crime punishable by more than one year in prison. In permitting the jury to consider the prior felony conviction, the circuit court exercised its discretionary judgment that defendant's credibility should be weighed together with his previous involvement in a serious crime. We find no abuse of that discretion.

## V

■ Defendant urges as error the alleged distortion of the burden of proof by the prosecutor's argument that the jury had to believe the State's two witnesses lied to acquit defendant. The State responds that the prosecutor's comments were an invited reply to defense counsel's argument, they were harmless beyond a reasonable doubt, and the issue was waived.

A jury may not be informed that in order to believe defendant or defense witnesses, the jury must find that all the prosecution witnesses were lying. (*People v. Cole* (1980), 80 Ill. App. 3d 1105, 1108, 400 N.E.2d 931; see *United States v. Vargas* (7th Cir. 1978), 583 F.2d 380, 387; *People v. Crossno* (1981), 93 Ill. App. 3d 808, 821-22, 417 N.E.2d 827.) Reversible error was not found where defendant's testimony directly contradicted that of significant State witnesses under similar circumstances (*People v. Alexander* (1984), 127 Ill.

App. 3d 1007, 470 N.E.2d 1071, *cert. denied* (1985), 471 U.S. 1019, 85 L. Ed. 2d 308, 105 S. Ct. 2027), and the prosecutor did not dwell on the issue of finding all the State's witnesses were lying. *People v. Roman* (1981), 98 Ill. App. 3d 703, 424 N.E.2d 794.

Here the prosecutor suggested that either the defendant or the victim lied, arguing that defendant "is saying" Mackin and the detective lied, referring to discrepancies in testimony given by defendant and the two State witnesses. The prosecutor did not inform the jury that they had to believe that all the State's witnesses lied to acquit defendant. Mackin and defendant gave contradictory accounts of whether the robbers conversed with defendant in Mackin's office and whether defendant pushed Mackin into the freezer. The detective and defendant differed about whether defendant was entering or leaving the country while arrested. Considering the foregoing evidence and the exact wording of the prosecutor's comments, we decline to find reversible error.

## VI

■ Defense counsel's failure to tender compulsion instructions, failure to object to damaging hearsay, and his elicitation of evidence regarding defendant's post-arrest silence is claimed by defendant to have violated his right to effective assistance of counsel.

Assertions of ineffective assistance of counsel require application of a two-pronged test: (1) counsel's performance must be below acceptable professional standards, and (2) there must be a reasonable probability that the result of the proceeding would have been different but for counsel's unprofessional errors. *Strickland v. Washington* (1984), 466 U.S. 668, 690, 694, 80 L. Ed. 2d 674, 695, 698, 104 S. Ct. 2052, 2066, 2068; *People v. Albanese* (1984), 104 Ill. 2d 504, 525-27, 473 N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061.

Defense trial counsel here is said to have erred unprofessionally by failing to object to damaging hearsay testimony of a detective regarding defendant's receiving unemployment checks at a liquor store, Mackin's car being found near defendant's alleged address, and defendant's being arrested while crossing the border from Canada to New York. None of these statements prejudiced defendant under *Strickland*. Trial counsel's raising the subject of defendant's post-arrest silence may have bordered upon unacceptable professional standards, but also may have been the result of trial strategy.

Defense counsel's failure to object to the given instructions or to offer compulsion instructions, however, was below the range of pro-

fessional competence. Trial counsel has been found ineffective for failing to offer self-defense instructions when that was the only defense raised. (*People v. Jaffe* (1986), 145 Ill. App. 3d 840, 853, 493 N.E.2d 600. See *People v. Brinson* (1980), 80 Ill. App. 3d 388, 394, 399 N.E.2d 1010; but see *United States ex rel. Huckstead v. Greer* (7th Cir. 1984), 737 F.2d 673, 675-76.) Here compulsion was the only defense raised. Counsel's failure to object or to tender instructions on this theory cannot be dismissed as trial strategy. Nor was the substance of the omitted instructions, that the prosecutor had to disprove compulsion beyond a reasonable doubt, placed before the jury in any other manner. There is a reasonable probability that but for counsel's error the result would have been different. (See *People v. Jaffe* (1986), 145 Ill. App. 3d 840, 854-55, 493 N.E.2d 600.) Under these circumstances, too, defendant is entitled to a new trial.

## VII

■ Finally, defendant argues his $20 fine is inappropriate where the circuit court failed to consider his financial resources. From comments made by the circuit court at sentencing, the fine appears to have been imposed pursuant to the Violent Crime Victims Assistance Act (Ill. Rev. Stat. 1985, ch. 70, par. 510(b)(2)). That act contains no reference to the guidelines of the Unified Code of Corrections, which sets forth penalties in section 5—9—1 (Ill. Rev. Stat. 1981, ch. 38, par. 1005—9—1), that require consideration of financial circumstances and future ability of an offender to pay a fine. We find no error in the imposition of the fine. See *People v. Bennett* (1986), 144 Ill. App. 3d 184, 186, 494 N.E.2d 847.

In view of the errors which occurred at trial with respect to the absence of instructions to the jury on the theory of compulsion and because of ineffective assistance of counsel, we must reverse defendant's conviction and remand for a new trial.

Reversed and remanded.

STAMOS and BILANDIC, JJ., concur.