THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, v.
KASPER ROBINSON, Petitioner-Appellant.

First District (2nd Division)   No. 85—80

Opinion filed June 23, 1987.

Paul P. Biebel, Jr., Public Defender, of Chicago (Jeffrey M. Howard, Assistant Public Defender, and Kasper Robinson, *pro se*, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Sharon L. Gaull, Steven J. Zick, and Mari R. Hatzenbuehler, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Petitioner appeals from the dismissal of his post-conviction petition contending that: (1) he was denied effective assistance of counsel at the time that he entered his plea of guilty and again after the imposition of the resultant sentences; (2) his criminal conduct amounted to unlawful restraint rather than home invasion; and (3) defects in the information charging him with home invasion rendered it fatally defective.

On June 1, 1983, at approximately 8 a.m., Karen Heritage heard the front door of her home being opened and went to investigate. She found petitioner standing in the living room. He grabbed her around the neck and began dragging her back toward the kitchen. The victim's 10-year-old son came out of his bedroom at this time, saw petitioner, and ran back to wake his father, Charles Heritage.

Charles came out of the bedroom and confronted petitioner. Petitioner demanded money and threatened to kill Karen, whom he was still holding by the neck. Charles went back to the bedroom and returned shortly with $126 in currency. He placed the money on the stereo where petitioner could reach it; as petitioner reached for the money, Karen informed her husband that petitioner was unarmed. Charles then lunged at petitioner, forced him to the floor and subdued him. Karen called the police, who arrived shortly and arrested peti-

tioner. The $126 in currency was recovered at that time.

Petitioner was charged with unlawful restraint, home invasion, robbery and residential burglary. (Ill. Rev. Stat. 1983, ch. 38, pars. 10—3, 12—11, 18—1, 19—3.) Petitioner previously had been indicted on seven separate charges of rape, attempted robbery, and burglary in 1973 and 1974, for which he was sentenced to concurrent terms ranging from 3 to 30 years after pleading guilty. When he attacked the Heritages, he had been out of prison for two months.

On January 3, 1984, petitioner stated his intention to plead guilty to all four charges. The circuit court informed him of the meaning of each of the charges, his possible eligibility for extended-term sentences, and the consequences of his pleas. He indicated that he understood. The court further admonished him as to the rights which he would be waiving by entering his guilty pleas and petitioner again indicated that he understood. The court then stated:

"[THE COURT]: Now, Mr. Robinson, do you understand what I have told you about your rights in this matter and the rights you give up when you plead guilty?

MR. ROBINSON: Yes, I do, sir.

THE COURT: Do you understand all the possible sentences I could impose?

MR. ROBINSON: Yes, I do, sir.

THE COURT: Understanding all that, do you still plead guilty?

MR. ROBINSON: Yes, I do, sir.

THE COURT: *Do you understand [that] there has been no agreement as to what sentence is to be imposed? Is that the way you understand it?*

MR. ROBINSON: *Yes, Sir.*

THE COURT: And it's going to be up to me. *That there have been no agreements as to what you're going to get?*

MR. ROBINSON: Yes, sir.

THE COURT: Let me ask you this. Did anybody threaten you or force you into pleading guilty?

MR. ROBINSON: No, they didn't, sir.

THE COURT: I am sure you were advised [that] the Court would impose a fair sentence, but apart from that, *were any other promises or representations made to convince you to plead guilty?*

MR. ROBINSON: No, there wasn't [*sic*], sir." (Emphasis added.)

The court then entered petitioner's plea of guilty and continued the

case until February 6, 1984, for sentencing.

Prior to sentencing, both petitioner and his parents wrote letters to the judge hearing the case. Neither of the letters is included in the appellate record although petitioner's letter apparently contained expressions of his remorse while his parents' letter apparently indicated their concern that petitioner had merely pleaded guilty out of fear of receiving a more severe sentence after trial.

On February 6, 1984, at the sentencing hearing, petitioner's attorney first addressed the concerns of petitioner's parents over whether he had been pressured into pleading guilty. He stated that they had assured him that their concerns for petitioner stemmed from their own impressions and not from anything that petitioner had said.

Thereafter, petitioner's attorney began arguing for imposition of a light sentence, stating, in part:

"This is genuinely a case where a Defendant is throwing himself on the mercy of the Court. I know, Kasper knows, his family knows that the punishment he is going to receive, perhaps, is going to be severe. He understands that.

* * *

He understands this Court has an obligation to society and *** the community *** and the complaining witnesses.

He understands that, I understand that, his family understands that, but I think that there is still potential for good in this young man and I am hopeful this Court ***, although we expect that the sentence is going to be somewhat lengthy, *** [will] at least give him an opportunity to see a light at the end of the tunnel.

He obviously knows that if there is any problem, he is never coming out again, he understands that."

The State then argued for extended-term and consecutive sentences totalling 90 years, premised upon petitioner's criminal record and the short time that he had been out of prison prior to committing these offenses.

Petitioner then made a statement stressing his remorse and his rehabilitative potential:

"I personally am very remorseful, I am sorry for standing in front of your Court room today. I am sorry for my family who have to witness this, I am sorry for the [victims] ***, *I know that *** I am entering this plea of guilty on my own will* and I know that you, *** have a job to do and *** that you [will] do it righteously.

All I would like you to do is show me some type of compas-

sion, some type of understanding and some type of mercy.

* * *

[A]ll I can say, your Honor, is that I know that you have a job to do and I would hope that you would do your job and make the best judgment that you deem possible for me ***." (Emphasis added.)

The court then analyzed all of the cogent considerations and imposed a 28-year sentence for home invasion, a concurrent 7-year sentence for robbery, and ruled that the convictions for residential burglary and unlawful restraint had merged.

Neither petitioner nor his attorney ever filed a motion to withdraw his plea and vacate the judgment. On April 26, 1984, however, petitioner filed a *pro se* petition for post-conviction relief alleging that his constitutional rights had been substantially denied when:

"[His] Attorney of Record *** informed *** [petitioner] and his family *** that *** [he] would not be facing a term of 28 years. He stated that if [petitioner] would enter a Blind-Plea that the presiding Judge would be fair and just. And that [he] would be sentence[d] in the middle "teens" or upper. *** When it came time for trial [the attorney] used 'Fear' tactics & persuasive conversation to deter [petitioner's] decision to go to 'Trial.' [Petitioner] was not armed nor was ** anyone hurt [during the crime]. [Petitioner] wrote [to the] Judge explaining his actions in the case, making him aware that he was entering the Plea upon fear that he would receive a harsh penalty if he [went] to Trial. [Petitioner's] family also wrote [the] same. Upon receiving 28 years for a crime that was not violent *** [petitioner] informed his lawyer that he wanted to withdraw his 'Plea.' [The attorney] never pursued this matter and [petitioner] was turned over to the Department of Corrections. [The attorney] *** stated that he would get the charge of Home-Invasion dropped because the law states the [petitioner has] to be armed with a weapon. [The] Attorney asked the Judge *** to drop [the] charge, but did not argue the Law with him. It[']s all in the Record."

On June 7, 1984, finding petitioner indigent, the circuit court directed that he be furnished with a copy of his trial transcript and appointed the public defender as counsel. On June 28, 1984, the State moved to dismiss the petition predicated primarily upon the fact that the plea and sentencing transcripts clearly refuted petitioner's assertions. The State attached an affidavit by petitioner's trial counsel stating that he fully informed petitioner and his family of the merits and consequences of both a trial and a guilty plea and that the plea resulted

from "the combined decision of [petitioner] and his family to forego a trial." The affidavit did not address the attorney's alleged failure to move to withdraw petitioner's plea and vacate the judgment.

After hearing argument on December 13, 1984, the circuit court ruled that an evidentiary hearing was unnecessary and granted the State's motion to dismiss.

I

Petitioner initially contends that he was denied effective assistance of counsel when his attorney used "fear tactics and persuasive conversation" to induce him to plead guilty and when that same attorney failed to move to withdraw the guilty plea after petitioner "informed his lawyer that he wanted to withdraw his plea."

■ To prevail on an assertion of ineffective assistance of trial counsel, petitioner must first demonstrate that counsel's performance was deficient in that it fell below an objective standard of reasonableness (*People v. Pegram* (1987), 152 Ill. App. 3d 656, 665, 504 N.E.2d 958, *appeal allowed* (1987), 115 Ill. 2d 547; *People v. Garvin* (1987), 152 Ill. App. 3d 438, 447, 504 N.E.2d 948), and then show a reasonable probability that but for counsel's unprofessional performance the result would have been different (*People v. Pegram* (1987), 152 Ill. App. 3d 656, 665, 504 N.E.2d 958; *People v. Garvin* (1987), 152 Ill. App. 3d 438, 446-47, 504 N.E.2d 948; *People v. Moore* (1986), 147 Ill. App. 3d 881, 888-90, 498 N.E.2d 701).

■ In the case *sub judice,* petitioner has asserted that he received ineffective assistance which induced his plea of guilty and further ineffective assistance after entry of that plea. The United States Supreme Court has developed a special test for judging purportedly deficient representation that induces a guilty plea. Under that test, petitioner is required to show counsel's deficient performance, but the prejudice to petitioner is then measured by the likelihood that his plea was induced by that deficiency. (*Hill v. Lockhart* (1985), 474 U.S. 52, 59, 88 L. Ed. 2d 203, 210, 106 S. Ct. 366, 370; see also, *People v. Padilla* (1986), 151 Ill. App. 3d 297, 300, 502 N.E.2d 1182.) The alleged ineffective assistance received after the entry of his plea, conversely, must be measured against the likelihood of a different result; of his prevailing on the motion to vacate the judgment and withdraw his plea. *People v. Garvin* (1987), 152 Ill. App. 3d 438, 446-47, 504 N.E.2d 948; *People v. Lieberman* (1986), 149 Ill. App. 3d 1052, 1056, 501 N.E.2d 797.

A

■ First, as to counsel's alleged inducement of petitioner's guilty

plea through fear tactics and persuasive conversation, the validity of a guilty plea is measured by whether it "represents a voluntary and intelligent choice among the alternative courses" open to the accused. (*Hill v. Lockhart* (1985), 474 U.S. 52, 56, 88 L. Ed. 2d 203, 208, 106 S. Ct. 366, 369, quoting *North Carolina v. Alford* (1970), 400 U.S. 25, 31, 27 L. Ed. 2d 162, 168, 91 S. Ct. 160, 164.) Petitioner in the present case asserts that he was "promised" a sentence in the mid-teens by his defense counsel; prior to the court's acceptance of his plea and at the sentencing hearing, however, he advised the court that no promises or representations had been made to him. Additionally, his attorney's affidavit states that petitioner was warned of the possibility of an extended-term sentence of up to 60 years and he was similarly admonished by the court prior to the entry of his plea. The court, in fact, while rejecting the State's request for consecutive sentences, found petitioner eligible for an extended-term sentence and stated that the range of available sentences was "from 6 to 60 years." The court then sentenced petitioner to 28 years, relying upon petitioner's extensive criminal history and the brevity of the period between his release and rearrest, balanced against his apparent remorse and the presence of some rehabilitative potential. Petitioner's trial counsel stated that he had informed petitioner of the extreme unlikelihood of prevailing at trial since he had been apprehended at the scene of the crime by his victims and had been held for police. The transcript of the hearing during which petitioner made his pleas of guilty clearly demonstrates the circuit court's conscientious performance of its obligations in admonishing and informing petitioner of the effects of his actions and in scrupulously safeguarding his rights. (*People v. Rodrigquez* (1970), 126 Ill. App. 2d 231, 261 N.E.2d 762.) Petitioner, who was not a stranger to the entry of a guilty plea as previously noted, was more than adequately admonished.

The circuit court carefully and repeatedly warned petitioner that it could sentence him to a term of imprisonment of up to 60 years. Nevertheless, petitioner contends that his expectation of a light sentence was permissible in reliance on the alleged assurances of his counsel and clearly implies that the court's lengthy and exhaustive admonitions were merely a perfunctory or ritualistic formality not requiring his attention. This characterization of the proceedings is unacceptable. *People v. Lambrechts* (1977), 69 Ill. 2d 544, 557, 372 N.E.2d 641.

The court thoroughly questioned petitioner, from which his acknowledgement emanated that no promises or agreements had been made as to his sentencing and that he understood the consequences of his guilty plea. Petitioner repeatedly said that he understood, he reiter-

ated his desire to plead guilty and subsequently, prior to his sentencing, he stated that he was entering his plea of his own will.

If a plea of guilty is to have any binding effect or is to be given any subsequent weight, the extensive and exhaustive admonitions given by the circuit court in this case and acknowledged by petitioner must be held to overwhelm petitioner's current assertion that he entered his plea involuntarily. A guilty plea made in reliance on the incorrect advice of counsel as to the anticipated term of a sentence is still a voluntary plea. (*People v. Jones* (1985), 135 Ill. App. 3d 1023, 1033, 482 N.E.2d 1031.) There simply is no basis for holding here that petitioner's guilty plea was not voluntarily made. He cannot now assert that he was pressured or misled into making that plea merely because he is dissatisfied with the length of the sentence imposed. (*People v. Lambrechts* (1977), 69 Ill. 2d 544, 557, 372 N.E.2d 641.) The circuit court's having informed him of the range of possible sentences, and his acknowledgment that there were no agreements or restraints on his sentencing, compels us to conclude that the circuit court's dismissal of his post-conviction petition was well founded. Further, in light of his statements in court during his guilty plea hearing and at his sentencing hearing, the circuit court did not err in not holding an evidentiary hearing on his post-conviction petition.

Seeking support from *People v. Morreale* (1952), 412 Ill. 528, 107 N.E.2d 721, petitioner asserts that his reliance on the bad advice of his counsel negated the effect of the court's admonitions. In *Morreale*, however, the supreme court relied on facts which were not similar to those presented in the instant appeal. The supreme court noted (*People v. Morreale* (1952), 412 Ill. 528, 532-33, 107 N.E.2d 721):

"There are several circumstances, *peculiar to the record before us in this cause*, which lead us to believe that the ends of justice will be better served by permitting [Morreale] to change his plea and submit the matter of his guilt to a jury. The circumstances surrounding the withdrawal of the plea of not guilty to which *** [he] had adhered many months, and the substitution of the plea of guilty, are not compatible with the concept of studied and orderly procedure. The hurried consultations between the accused's counsel, the prosecutor, the substitute attorney and the accused himself, which were accomplished during a recess of court by passing back and forth between two courtrooms, could not but help to engender confusion and misapprehension in [Morreale]. The pressure exerted by the prosecutor for the instant disposal of the charge and its subsequent result of denying to [Morreale] representation by the actual counsel of his choice

are other factors which lend an unsatisfactory tone to the record. \*\*\* [I]t was the prosecutor who sought out the accused's counsel and suggested the plea of guilty and an application for probation, and [Morreale], after having seen his counsel and the prosecutor in consultation, was advised that if he pleaded guilty he would not 'get hurt' and would get probation. It should be repeated that the haste and manner in which the arrangements were made is the dominating factor in creating a belief that [Morreale] was induced to change his plea while confused and in a state of misapprehension. When all the circumstances are considered, particularly the fact that the prosecutor was the moving party in suggesting that no harm would come to [Morreale] if he pleaded guilty, it is difficult to say that his act was a knowing and studied attempt to throw himself on the mercy of the court in a hope for milder punishment." (Emphasis added.)

In the case *sub judice*, the peculiar factors important in *Morreale* are not present. Petitioner was not being represented by his counsel's "youthful associate"; the State's Attorney was not pressuring or advising him to plead guilty in exchange for a recommendation of probation, he was not "induced to change his plea while confused and in a state of misapprehension"; and the required admonitions were substantially different from those required in 1952 when Morreale pleaded guilty. (Compare Ill. Rev. Stat. 1951, ch. 38, par. 732, with 87 Ill. 2d R.402.) Accordingly, we find no error in the circuit court's denying petitioner an evidentiary hearing. See *People v. Larkin* (1971), 2 Ill. App. 3d 43, 44-45, 275 N.E.2d 763.

Similarly, petitioner's assertion that he did not believe that he could be convicted of home invasion is not persuasive. The court read the charge to him, he acknowledged that he understood the charge and he subsequently pleaded guilty to the charge. Nothing indicates that the plea was involuntary.

### B

■ Petitioner next contends that he was denied effective assistance of counsel after the entry of his plea when he allegedly "told [his] lawyer that he wanted to withdraw the plea" and trial counsel failed to do so. First, it should be noted that counsel's affidavit has failed to address this point and the conduct alleged must be taken as true for purposes of evaluating the circuit court's dismissal of the petition. (*People v. Porter* (1986), 141 Ill. App. 3d 208, 215, 490 N.E.2d 47, *appeal allowed* (1986), 112 Ill. 2d 589.) Acting upon a presumption that the allegation is true, the conduct must be viewed as falling below an objec-

tive standard of reasonableness. (*People v. Garvin* (1987), 152 Ill. App. 3d 438, 446-47, 504 N.E.2d 948.) The issue then becomes whether counsel's deficient performance prejudiced petitioner; what is the likelihood that if the motion had been filed that it would have been allowed. (See *People v. Pierce* (1971), 48 Ill. 2d 48, 53-54, 268 N.E.2d 373.) This analysis is limited to whether petitioner would have been allowed to withdraw his plea and proceed to trial, and does *not* concern the likelihood that he could have prevailed at trial or the likelihood that he would have received a different sentence.

■ Petitioner's hope for a more lenient sentence does not provide the basis for allowing the withdrawal of his guilty plea. (*People v. Lambrechts* (1977), 69 Ill. 2d 544, 557, 372 N.E.2d 641; *People v. Morreale* (1952), 412 Ill. 528, 532, 107 N.E.2d 721; *People v. Jones* (1985), 135 Ill. App. 3d 1023, 1033, 482 N.E.2d 1031; *People v. Gierbolini* (1984), 128 Ill. App. 3d 794, 795-96, 471 N.E.2d 625; see also *United States v. Marcus* (7th Cir. 1954), 213 F.2d 230, 232, *cert. denied* (1954), 348 U.S. 824, 99 L. Ed. 650, 75 S. Ct. 39.) Similarly, petitioner's assertions of ineffective assistance of counsel as inducing his plea are unpersuasive as a ground for allowing its withdrawal. As discussed previously, his statements at his plea hearing and at the sentencing deny credibility to his present assertions. Even if believed, in total contradiction of his previous statements to the circuit court at the plea hearing and the affidavit of his attorney, his assertion that his trial counsel's erroneous assurances that he would receive a sentence in the middle or upper teens was not the sort of conduct considered as falling below an objective standard of reasonableness. (See *People v. Jones* (1985), 135 Ill. App. 3d 1023, 1033, 482 N.E.2d 1031.) Accordingly, petitioner could not have prevailed in a motion to withdraw his guilty plea and post-conviction relief was therefore unwarranted.

## II

■ Petitioner has raised two additional issues in a *pro se* brief, neither of which was raised in his petition for post-conviction relief. Neither was addressed by the circuit court nor need they be addressed by this court. Nevertheless, even if they were to be addressed, they are not persuasive.

Petitioner first contends that he was erroneously convicted of home invasion when the stipulated facts failed to demonstrate that he had injured his victim. He was convicted of home invasion, which is statutorily defined (Ill. Rev. Stat. 1983, ch. 38, par. 12—11) as:

"(a) A person *** commits home invasion when without authority he *** knowingly enters the dwelling place of another

when he \*\*\* knows or has reason to know that one or more persons is present and \*\*\*

(2) Intentionally causes any injury to any person \*\*\* within such dwelling place."

Our supreme court has not addressed precisely what conduct constitutes a qualifying injury under section 12—11(a)(2); it has, however, in defining "bodily harm" under battery (*People v. Mays* (1982), 91 Ill. 2d 251, 256, 437 N.E.2d 633), stated:

"Although it may be difficult to pinpoint exactly what constitutes bodily harm \*\*\*, some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent, is required."

Petitioner asserts, in reliance on *People v. Boyer* (1985), 138 Ill. App. 3d 16, 18-20, 485 N.E.2d 460, that absent proof of physical trauma to his victim, the requisite injury was not proved. In this instance, however, unlike *Boyer*, such injury was factually supported by the stipulated testimony that petitioner's victim's neck injuries, including bruises, lasted for more than two weeks, satisfying *Boyer's* interpretation of the section 12—11(a)(2) injury requirement. Accord *People v. Wallace* (1986), 145 Ill. App. 3d 247, 251-52, 495 N.E.2d 665 (holding that bruises were a section 12—11(a)(2) injury).

### III

Petitioner's *pro se* brief also asserts several defects in the information which charged him with home invasion. The information, however, is not included in the record. Petitioner asserts that the information did not charge that he acted intentionally or that he acted without authority. At the plea hearing, however, the court read the charge using the phrases "knowingly entered" and "knowingly entered without permission." "Knowingly" is the intent statutorily required for home invasion and "without permission" is a more narrowly defined status than "without authority." (Ill. Rev. Stat. 1983, ch. 38, par. 12—11.) Petitioner's assertions of error, therefore, are not persuasive.

Accordingly, we affirm the dismissal of petitioner's post-conviction petition.

Affirmed.

STAMOS and BILANDIC, JJ., concur.