NOTICE

Decision filed 11/18/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 200423-U

NO. 5-20-0423

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 15-CF-154 |
| | ) | |
| ROBERT BILLUPS, | ) | Honorable |
| | ) | John J. O'Gara, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Welch and Barberis concurred in the judgment.

**ORDER**

¶ 1   *Held*: Where the defendant failed to make a substantial showing of a constitutional violation, and any argument to the contrary would lack merit, the defendant's appointed appellate counsel is granted leave to withdraw, and the judgment of the circuit court, dismissing the postconviction petition at the second stage of postconviction proceedings, is affirmed.

¶ 2   The defendant, Robert Billups, appeals from an order of the circuit court of St. Clair County that granted the State's motion to dismiss his amended petition for postconviction relief. The defendant's appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), has concluded that the instant appeal lacks substantial merit, and on that basis, it has filed with this court a motion for leave to withdraw as counsel, along with a memorandum of law in support thereof. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD gave the defendant proper notice of its motion, and this court provided him with ample opportunity to file a *pro se* brief,

1

memorandum, or other document explaining why OSAD should not be allowed to withdraw as counsel, or why this appeal has merit. The defendant has not taken advantage of that opportunity. Having examined OSAD's *Finley* motion and memorandum of law, as well as the entire record on appeal, this court has concluded that this appeal does indeed lack merit. Accordingly, OSAD is granted leave to withdraw as counsel, and the judgment of the circuit court is affirmed.

¶ 3                                    I. BACKGROUND

¶ 4      In February 2015, the defendant was charged with 11 felony counts. Specifically, he was charged with criminal sexual assault (720 ILCS 5/11-1.20(a)(1) (West 2014)) (count 1), aggravated domestic battery (*id.* § 12-3.3(a-5)) (count 2), kidnapping (*id.* § 10-1(a)(2)) (count 3), unlawful restraint (*id.* § 10-3(a)) (count 4), and seven counts of domestic battery with a prior domestic-battery conviction (one count under *id.* § 12-3.2(a)(1)) and six counts under *id.* § 12-3.2(a)(2)) (counts 5 through 11). In each of the 11 counts, the complaining witness was the defendant's former girlfriend, Tomara Bolden.

¶ 5      Criminal sexual assault was a Class 1 felony. *Id.* § 11-1.20(b)(1). A prison sentence for criminal sexual assault would be mandatory consecutive to any other charges. 730 ILCS 5/5-8-4(d)(2) (West 2014). Aggravated domestic battery was a Class 2 felony, but because the defendant had a prior conviction for aggravated domestic battery, prison was mandatory, and he was eligible for an extended-term sentence of 7 to 14 years. 720 ILCS 5/12-3.3(b) (West 2014). Kidnapping was a Class 2 felony. *Id.* § 10-1(c). Unlawful restraint was a Class 4 felony. *Id.* § 10-3(b). Domestic battery with a prior domestic-battery conviction was a Class 4 felony. *Id.* § 12-3.2(b). Due to the defendant's criminal history, he was eligible for an extended-term sentence of three to six years. 730 ILCS 5/5-4.5-45(a) (West 2014).

¶ 6     The defendant had a prior conviction for domestic battery, subsequent offense, in case No. 13-CF-291. He had a prior conviction for aggravated domestic battery in case No. 12-CF-68. The victims in those two earlier cases were persons other than Tomara Bolden.

¶ 7     In June 2015, defense counsel informed the court that he had a *bona fide* doubt about the defendant's fitness for trial, and he moved for a fitness evaluation. The court granted the motion, and appointed Dr. Daniel Cuneo to perform it.

¶ 8     In July 2015, Dr. Cuneo filed his report. He stated that the defendant was mildly intellectually disabled and mentally ill ("dysthymic disorder," etc.), and that he abused substances (cocaine, etc.). However, he was fit to stand trial. In September 2015, Dr. Cuneo filed another report in the instant case. He opined that the defendant was "legally sane at the time of the alleged offenses," but qualified for a plea of guilty but mentally ill.

¶ 9     In January 2016, the defendant, his attorney, and an assistant state's attorney appeared before the circuit court. In response to the court's questions, the defendant indicated that he had spoken with his attorney, that he understood what he was doing, and that his best interests would be served by waiving his right to a jury trial. He also indicated his understanding that by waiving a jury trial, he was agreeing that all the evidence at a trial would be presented to a judge, who alone would "determine *** guilt or innocence." The defendant did not have any questions. When the judge asked him, a final time, if he wanted to waive his right to a jury trial, he answered, "Yes, sir." The court accepted the waiver of jury trial and scheduled the case for a bench trial. A written "waiver of jury trial," which included an election to be tried by the court, was signed by the defendant. The written jury waiver is part of the record on appeal.

¶ 10     In March 2016, the defendant, defense counsel, and an assistant state's attorney appeared before the circuit court. The assistant state's attorney announced that the parties had negotiated a

3

partial plea agreement covering the instant case and case Nos. 12-CF-68 and 13-CF-291, two older cases in which petitions to revoke probation (PTRPs) had been filed by the State. More specifically, in exchange for the defendant's pleading guilty to aggravated domestic battery (count 2) and seven counts of domestic battery (counts 5 through 11) in the instant case, and his admitting to the PTRPs in the two older cases, the State would agree to cap his prison sentence at 18 years with a minimum sentence of 6 years, and would move to dismiss the instant case's charges of criminal sexual assault (count 1), kidnapping (count 3), and unlawful restraint (count 4). The defendant and defense counsel indicated that the agreement's terms had been stated accurately.

¶ 11    In answer to the court's queries, the defendant stated that he was 34 years old and had a ninth-grade education. He indicated that he did not have any mental or physical disability that would make it difficult for him to understand what he was doing, and that he had not taken any drugs or alcohol that could affect his understanding. He also indicated that all the paperwork in his case had been explained to him, and that he did not have any difficulty in understanding discussions with his attorney. He indicated that he did not have difficulty understanding anything that already had happened in court that day. He also indicated that he had plenty of opportunity to talk to his attorney and was satisfied with the attorney's services. Further, he indicated his understanding that the court was not bound by the sentencing range in the parties' agreement, that the court alone would decide his sentencing, and that the court could sentence him to more than the 18-year maximum, or less than the 6-year minimum, that were included in the agreement.

¶ 12    The court admonished the defendant as to the nature of the charge of aggravated domestic battery and informed him that it was a Class 2 felony, and because of his criminal history, it was not a probation eligible offense, and he was subject to imprisonment from 3 to 14 years (extendable due to his criminal history). The court admonished him as to the nature of the charges in the seven

4

counts of domestic battery, a Class 4 felony, and advised him that each count was punishable by one to six years' incarceration (extendable due to his criminal history). The defendant indicated his understanding of the charges and penalties. The court stated that in all eight counts, sentencing could be consecutive ("one after the other") or concurrent, or some counts could be concurrent and others consecutive, and the defendant indicated his understanding. The court also admonished the defendant about the two older cases, case Nos. 12-CF-68 and 13-CF-291, in which PTRPs were pending. The court admonished the defendant, in the instant case, about his right to plead not guilty; the State's burden of proving him guilty beyond a reasonable doubt; his right to a trial by jury or by the court alone; his right to confront and cross-examine, through counsel, the State's witnesses; his right to call witnesses in his defense; and his right to testify or not testify. The defendant indicated his understanding of those admonishments. The court asked the defendant whether he understood that by pleading guilty in the instant case, he would be waiving all those rights, and the defendant answered in the affirmative.

¶ 13    Next, the State presented a factual basis for the defendant's eight guilty pleas. Essentially, the State described how the defendant brutally pulled the hair of Tomara Bolden and forced her to leave her home and to go to his home, where he repeatedly struck her with his hands, a baseball bat, and a metal pipe, and threw her to the floor, repeatedly kicking her, and held a chair to her throat, impeding her breathing. Defense counsel stipulated that the State's witnesses would testify substantially as stated. The court noted a report written by Dr. Daniel Cuneo, in which he opined that the defendant would qualify for a plea of guilty but mentally ill, and the court found that he would qualify.

¶ 14    The court asked the defendant whether anyone had threatened him, or had promised him anything, to persuade him to plead guilty, and the defendant answered in the negative. The court

asked him whether he was pleading guilty "freely and voluntarily, without any pressure or force," and he answered in the affirmative. Asking about the eight counts individually, the defendant pleaded "[g]uilty" to count 2, aggravated domestic battery, and to counts 5 through 11, domestic battery. The court accepted the pleas, finding that they were "knowingly, understandingly and voluntarily" entered. The court showed similar thoroughness in the two older cases, Nos. 12-CF-68 and 13-CF-291, wherein it accepted the defendant's admissions to the PTRPs as knowingly and voluntarily made. The court ordered the preparation of a presentence investigation report and set the cause for sentencing.

¶ 15    In April 2016, the cause was called for a sentencing hearing in the instant case and in the two older cases, Nos. 12-CF-68 and 13-CF-291. Again, the defendant indicated, in response to the court's queries, that he was not suffering from any type of mental or physical disability, and had not consumed any drugs or alcohol, that affected his ability to understand the proceedings, and he indicated that he had had ample opportunity to prepare for sentencing and was satisfied with his counsel's services. Referring to the defendant's guilty-plea hearing, the court stated that it had announced that the defendant had entered a plea of guilty, "but it was a plea of guilty but mentally ill." Both the assistant state's attorney and defense counsel confirmed that that was the exact nature of the plea.

¶ 16    In aggravation, the State called the victim in the instant case, Tomara Bolden, and presented her written victim impact statement. Essentially, she said that she lives in fear and has difficulty sleeping as a result of the defendant's attack. The State also presented a certified copy of the defendant's juvenile offense for aggravated criminal sexual assault. In mitigation, defense counsel asked only that the court consider the contents of Dr. Cuneo's written reports, which, he said, made clear that "we are dealing with a mentally ill substance abuser," a fact that should be considered

6

when fashioning a sentence. The defendant presented a statement in allocution, in writing, which is not included in the record on appeal. The State argued for the maximum aggregate sentence allowed under the terms of the plea agreement—18 years in prison, with 14 years for aggravated domestic battery (count 2), and sentences for the other crimes to fill the remainder. The defense argued for the minimum aggregate sentence under the plea agreement, six years.

¶ 17    The court sentenced the defendant, in the instant case, to 12 years of imprisonment for the one count of aggravated domestic battery (count 2), and 6 years of imprisonment for each of the seven counts of domestic battery (counts 5 through 11), with all eight sentences to run concurrently, followed by 4 years of mandatory supervised release (MSR). As for the two older cases—case Nos. 12-CF-68 and 13-CF-291, in which the defendant had admitted the allegations in PTRPs—the court sentenced the defendant to imprisonment for three years in each case, with the sentences to run concurrently with one another, but consecutive to the sentences in the instant case, followed by four years of MSR. The total aggregate prison sentence, therefore, was 15 years, 3 years fewer than the parties' agreed maximum. After imposing these sentences, the court admonished the defendant as to his appeal rights, and he indicated his understanding.

¶ 18    In August 2016, the defendant filed an untimely *pro se* motion to reconsider sentence. In December 2016, the circuit court entered a written order noting that the motion was filed more than 30 days after sentencing; the court "denied" the motion based on a lack of jurisdiction. The defendant filed a *pro se* notice of appeal. The circuit court appointed OSAD to represent him, and OSAD filed a motion to dismiss the appeal, stating that the defendant had decided to dismiss it. In May 2017, this court granted the motion and dismissed the appeal. *People v. Billups*, No. 5-17-0002.

7

¶ 19    In November 2017, the defendant filed, in the instant case, a *pro se* petition for postconviction relief. He claimed that plea counsel had provided constitutionally ineffective assistance, and that the sentencing court had abused its discretion, and he sought vacatur of his sentence. Accompanying the postconviction petition was an affidavit from the defendant, who swore to the factual allegations of the petition, and an affidavit from a fellow prison inmate, who had conceived of the petition's legal reasoning and who had written the petition. In December 2017, the defendant filed *pro se* a "supplementary motion" to his postconviction petition. The defendant sought to supplement his petition with an affidavit from his sister, Tamekia Washington, who wrote that plea counsel had made various promises about what he was going to do for the defendant, but in the end he did not do anything.

¶ 20    The circuit court found that the defendant had stated the gist of a constitutional claim. It advanced the postconviction proceedings to the second stage and appointed postconviction counsel for the defendant. Substitute postconviction counsel was later appointed.

¶ 21    In December 2018, Dr. Cuneo filed another report—his third—in the instant case. He found that the defendant was fit at the time of his sentencing.

¶ 22    In August 2020, the defendant filed, by substitute postconviction counsel, an amended postconviction petition in the instant case. The defendant claimed that plea counsel had provided constitutionally ineffective assistance by telling him, before the guilty-plea hearing, that "the plea agreement was for a term of three to eight years of incarceration," and that he should not disagree with anything that the judge told him during the guilty-plea hearing, "or he would risk making his situation worse." Because of his lawyer's advice, and the defendant's own very low intelligence, the defendant did not express his disagreement when the court informed him, at the hearing, that he would serve 6 to 18 years in prison. The defendant "did not fully understand the sentencing

8

range and felt compelled to answer as if he understood." Sometime after the hearing, the defendant asked plea counsel to file a postsentencing motion. Sometime after the 30-day filing deadline had passed, the defendant learned that his attorney had not filed the requested motion. The defendant filed a *pro se* motion, but it was too late, and the defendant lost his right to appeal. As for relief, the defendant sought vacatur of the plea and sentence, and a trial by jury. The next month, the State filed a motion to dismiss the amended postconviction petition.

¶ 23    In November 2020, the circuit court called the cause for a hearing on the State's motion to dismiss the amended postconviction petition. Defense counsel began by seeking to amend the petition so that it would apply not just to the instant case, but also to case Nos. 12-CF-68 and 13-CF-291. The assistant state's attorney did not object, and the court granted the motion. The parties argued briefly for or against the motion. The court said that it wanted to review the transcripts, Dr. Cuneo's reports, prior motions, etc., and it took the matter under advisement.

¶ 24    On December 8, 2020, the court entered an order granting the State's motion to dismiss. The court found that the record refuted the allegations that plea counsel misrepresented the plea agreement, and that the defendant did not understand the sentence he faced under the agreement. Both the guilty-plea transcript and the sentencing transcript, said the court, showed that the defendant "had ample opportunities to register an objection to the stated terms if those ran counter to what he intended to agree to." Also, the court stated that even if plea counsel had erred as described in the petition, the defendant failed to show that he was prejudiced by counsel's error.

¶ 25    The defendant filed a timely *pro se* notice of appeal, thus perfecting the instant appeal. The circuit court appointed OSAD to represent him.

¶ 26                                    II. ANALYSIS

¶ 27    The defendant appeals from the circuit court's second-stage dismissal of his amended petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). Appellate review of the dismissal is *de novo*. *People v. Dupree*, 2018 IL 122307, ¶ 29. As previously mentioned, the defendant's appointed attorney on appeal, OSAD, has concluded that this appeal lacks merit, and has filed a *Finley* motion to withdraw as counsel, along with a legal memorandum in support of the motion. The defendant has not filed a reply. This court agrees with OSAD's assessment of this appeal.

¶ 28    The Act provides a method by which any person imprisoned in the penitentiary may assert that his conviction resulted from a substantial violation of his federal or state constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2020); *People v. Smith*, 2015 IL 116572, ¶ 9. A proceeding under the Act is a collateral proceeding, not an appeal from the judgment of conviction. *People v. English*, 2013 IL 112890, ¶ 21. A criminal defendant initiates a postconviction proceeding by filing a petition in the circuit court. 725 ILCS 5/122-1(b) (West 2020). If the petition is not dismissed at the first stage as frivolous or patently without merit, it advances to the second stage. *Id.* § 122-5. At the second stage, the State may either answer the petition or move to dismiss it. *People v. Domagala*, 2013 IL 113688, ¶ 33. If the State moves for dismissal, the circuit court must decide whether to grant the State's motion or advance the petition to the third stage for an evidentiary hearing. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). A petitioner is entitled to an evidentiary hearing only if the petition's allegations—supported by "affidavits, records, or other evidence" (725 ILCS 5/122-2 (West 2020))—make "a substantial showing of a constitutional violation." *Edwards*, 197 Ill. 2d at 246.

10

¶ 29 At the second stage, the inquiry into whether a postconviction petition contains sufficient allegations of constitutional violations "does not require the circuit court to engage in any fact-finding or credibility determinations." *People v. Coleman*, 183 Ill. 2d 366, 385 (1998). Such determinations are made at the litigation's evidentiary stage, not at the dismissal stage. *Id.* Also, at the second stage, the circuit court examines a postconviction petition to determine its legal sufficiency, and any allegations not affirmatively refuted by the record must be taken as true. *Domagala*, 2013 IL 113688, ¶ 35. Thus, the substantial showing of a constitutional violation that must be made at the second stage is a measure of the legal sufficiency of the petition's well-pleaded allegations of a constitutional violation, which, if proven at an evidentiary hearing, would entitle the postconviction petitioner to relief. *Id.* The dismissal of a postconviction petition at the second stage is warranted only if "the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation." *People v. Hall*, 217 Ill. 2d 324, 334 (2005).

¶ 30 In the instant case, the defendant claimed in his amended petition that plea counsel had provided constitutionally ineffective assistance by telling him, before the guilty-plea hearing, that "the plea agreement was for a term of three to eight years of incarceration," and that he should not disagree with anything that the judge told him during the guilty-plea hearing, "or he would risk making his situation worse." Because of his lawyer's advice, and the defendant's own very low intelligence, the defendant did not express his disagreement when the court informed him, at the hearing, that he would serve 6 to 18 years in prison. The defendant continued that he "did not fully understand the sentencing range and felt compelled to answer as if he understood." OSAD, in the memorandum that accompanies its *Finley* motion, raises one potential issue—whether the defendant's allegations made a substantial showing of ineffective assistance by plea counsel.

11

¶ 31     A claim that a defendant was denied his constitutional right to the effective assistance of counsel is governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under that test, a defendant must show both (1) that his attorney's performance fell below an objective standard of reasonableness, as measured by reference to prevailing professional norms, and (2) that the substandard representation so prejudiced the defendant that there is a reasonable probability that, absent the errors, the outcome would have been different. *Id.* at 687-88. A defendant must satisfy both prongs of *Strickland*; failure to satisfy either prong precludes a finding of ineffective assistance. *People v. Clendenin*, 238 Ill. 2d 302, 317-18 (2010). *Strickland* applies to claims arising out of the plea process. *Missouri v. Frye*, 566 U.S. 134, 140 (2012); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

¶ 32     However, at the defendant's guilty-plea hearing, the circuit court exhaustively admonished and questioned the defendant in compliance with Illinois Supreme Court Rule 402 (eff. July 1, 2012) ("substantial compliance" with the rule is all that is required). Rule 402 was designed to ensure that a guilty plea is not accepted unless the record affirmatively indicates that the plea was both knowing and voluntary. That is, it was designed to ensure that a guilty plea satisfies due process. *People v. Fuller*, 205 Ill. 2d 308, 323 (2002). "If a plea of guilty is to have any binding effect or is to be given any subsequent weight," a circuit court's "extensive and exhaustive admonitions," acknowledged by the defendant, must be held to "overwhelm [a defendant's] current assertion that he entered his plea involuntarily." *People v. Robinson*, 157 Ill. App. 3d 622, 629 (1987). "A guilty plea made in reliance on the incorrect advice of counsel as to the anticipated term of a sentence is still a voluntary plea." *Id.*

¶ 33     Here, this court's recapitulation of the defendant's guilty-plea hearing, *supra*, makes clear that the circuit court admonished the defendant as to the nature of each and every one of the charges

12

to which he would plead guilty—aggravated domestic battery, and seven counts of domestic battery with a prior domestic-battery conviction. The defendant indicated his understanding of them. The court then admonished him on the possible sentences for each of those charges, including extended-term sentences and consecutive sentencing. He indicated his understanding. When reviewing the terms of the parties' plea agreement, the court explained that the State could seek a maximum aggregate sentence of 18 years in prison, and that the defendant had agreed to a minimum of 6 years, but the court then added that it alone would have the final say as to his sentences. The defendant indicated his understanding of all that.

¶ 34    As the court noted in the written order that dismissed the amended postconviction petition, both the guilty-plea transcript and the sentencing transcript showed that the defendant "had ample opportunities to register an objection to the stated terms if those ran counter to what he intended to agree to." He did not register an objection at either of those two hearings. Despite any misinformation or misrepresentations that plea counsel may have provided to the defendant prior to the guilty-plea hearing, the court at the guilty-plea hearing thoroughly admonished him as to the nature of the charges, the possible penalties, the plea terms, and matters relating to voluntariness (force, promises, etc.). The knowing and voluntary nature of the defendant's guilty pleas cannot be doubted.

¶ 35                                III. CONCLUSION

¶ 36    The defendant failed to make a substantial showing of a constitutional violation. He claimed in his amended postconviction petition that plea counsel had misrepresented the terms of the plea agreement, particularly in regard to the sentences. However, the circuit court thoroughly admonished him about all aspects of the plea agreement, satisfying Rule 402, and ensuring that the defendant received due process. The court did not err in dismissing the defendant's amended

13

petition at the second stage, and no contrary argument would have merit. Accordingly, OSAD is granted leave to withdraw as counsel, and the judgment of the circuit court is affirmed.

¶ 37     Motion granted; judgment affirmed.